220 So.2d 399 (1969)
Lawrence Thane TEGETHOFF, Appellant,
v.
STATE of Florida, Appellee.
No. 1821.
District Court of Appeal of Florida. Fourth District.
March 12, 1969.
Rehearing Denied April 9, 1969.
Leon H. Handley and Bruce McEwan, of Gurney, Gurney & Handley, Orlando, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Charles W. Musgrove, Asst. Atty. Gen., West Palm Beach, for appellee.
*400 REED, Judge.
The appellant, Lawrence Thane Tegethoff, was tried in the Criminal Court of Record for Orange County, Florida, under an information which alleged that on 22 May 1966 he caused the death of one Raymond Terry Potter by culpable negligence in the operation of a motor vehicle. The defendant was tried by a jury which returned a verdict of guilty. The trial court entered an adjudication of guilt and placed the defendant on probation for a period of ten years. The defendant has appealed from the adjudication of guilt and the order of probation.
At the close of the state's case and again at the close of all the testimony the defendant made a motion for a directed verdict. Following the verdict and the adjudication of guilt a post-trial motion for new trial was made. Each of these motions was denied.
The assignments of error filed in this appeal charge that the trial court erred in failing to grant the said motions because the evidence was insufficient to show that the defendant caused the death of Raymond Terry Potter as charged by the information. The only question before this court, therefore, is whether or not the evidence was legally sufficient to show a causal connection between the culpable negligence of the defendant and the death of Raymond Terry Potter.
In examining a record to determine the sufficiency of evidence, an appellate court need only find substantial competent evidence to support the verdict. The verdict and judgment carry a presumption of correctness; hence, all inferences to be drawn from the evidence are to be drawn in favor of the verdict and judgment. Crum v. State, Fla.App. 1965, 172 So.2d 24.
The following facts are stated in light of the foregoing principles. Between 3:30 and 4:00 a.m. on 22 May 1966 a deputy sheriff with the Orange County Sheriff's Department saw the defendant driving a 1966 Buick automobile in a southerly direction on Route 17-92 at its intersection with Horatio Avenue in Maitland, Florida. The vehicle was traveling at a high rate of speed in the parking lane on the westernmost side of the highway. The deputy sheriff, upon seeing the defendant's vehicle, gave chase. As the vehicle proceeded south it ran into a median strip along the center of the highway and then proceeded through a red light at an intersection. In so doing, the defendant passed between two vehicles that were stopped waiting for the light to change. At this point the deputy sheriff turned on the blue warning light on the top of his automobile and periodically thereafter sounded the siren.
The defendant, instead of pulling to the side and stopping his vehicle in response to the signals from the sheriff's vehicle, continued to travel south at speeds up to 90 miles an hour and passed through three more red lights en route to the point of the accident. North of the point of accident the road curved. The defendant slowed to approximately 75 miles an hour at the curve and veered from the west side of the road to the east side of the road. On coming out of the curve, the defendant accelerated his automobile and traveled to the point of impact with the deceased's vehicle. This was within the city limits of Orlando on the west side of Route 17-92 at a point adjacent to a driveway leading to a motel situated west of the road. From photographs introduced in evidence and the testimony of the deputy sheriff and other witnesses who came upon the scene shortly after the accident, it appears that the defendant's vehicle ran into approximately the mid-section of the right side of deceased's vehicle, a white Rambler station wagon. At the time of impact the front of the wagon was facing west.
The distance from the point where the deputy sheriff first saw the defendant to the point where the accident occurred was approximately four miles. The speed limit *401 over this stretch of road varied from 45 miles per hour in Maitland to 35 miles an hour at the place where the collision occurred.
In the vicinity of the accident, Route 17-92 runs approximately north and south and has several southbound lanes as well as several northbound lanes. There was no median strip dividing the highway, but there were double yellow lines along the center of the road. From photographs in evidence there appears to be no structures along the center line of the road to block the view of traffic. The road was well lighted in the vicinity of the accident and straight and level. It also appears from the photographs that the driveway to the motel was free of obstruction to view for several feet west of the highway.
At the location of the accident, there was also at least one motel on the east side of the road as well as other commercial establishments. The deputy sheriff who was following the defendant testified that there was no other traffic visible to him in the area.
Tire and scuff marks on the road indicated that the two vehicles after impact traveled in a very slight arc moving up over the curb along the west side of the road and back into the westernmost southbound lane finally coming to rest about 220 feet south of the point of impact. In the process, the two vehicles demolished a telephone booth and a stop sign situated on the sidewalk. The body of the deceased was found 50 to 75 feet northwest of the place where the vehicles stopped.
An investigating officer testified that he was unable to find any skid marks prior to the point of impact. An ambulance driver who assisted in placing the defendant into the ambulance testified that he smelled an odor of alcohol on the defendant's breath. The weather was clear, the pavement was dry, and the visibility was good.
There was no evidence from any witness as to the path taken by the station wagon in reaching its unfortunate position in front of the oncoming vehicle of the defendant. The defendant's brief points out that the station wagon could have been proceeding north along Route 17-92 and turned left into the motel or could have been backing out from the motel and onto the highway. The deputy sheriff who was following the defendant by about one-half mile testified that at the time of impact he merely saw a cloud of dust and did not realize that another vehicle was involved until he arrived on the scene.
The defendant argues that because there was no evidence showing how the decedent got into the path of the defendant, the evidence is legally insufficient to show that the conduct of the defendant caused the death of the decedent.
The statute under which the information was founded, Section 782.07, F.S. 1965, F.S.A., provides:
"The killing of a human being by the * * * culpable negligence of another, in cases where such killings shall not be justifiable or excusable homicide nor murder, according to the provisions of this chapter, shall be deemed manslaughter * * *."
Culpable negligence within the meaning of that statute has been defined as conduct which reveals a reckless disregard for or indifference to the life, safety or rights of other persons or an indifference to consequences regardless of who is affected. Fulton v. State, Fla. 1959, 108 So.2d 473.
Although the assignments of error do not raise an issue with respect to the sufficiency of the evidence to demonstrate culpable negligence, it is important to an understanding of the problem of causation to note that which was the culpable negligence in the present case. In our opinion, the defendant was culpably negligent in driving his vehicle at an excessively high rate of speed at night in an area surrounded by motels to or from which vehicles might be expected to travel  all in an unlawful *402 effort to avoid arrest by a law enforcement officer.
A causal connection must be proved by the state between the culpable negligence and the death of another to sustain a conviction for manslaughter, and it must be proved beyond a reasonable doubt. Thompson v. State, 1933, 108 Fla. 370, 146 So. 201. Unfortunately, however, there is a lack of authoritative case law in this state which explains the nature of the causal connection which must be shown.
In the case of Karl v. State, Fla.App. 1962, 144 So.2d 869, the District Court of Appeal for the Third District indicated without discussion that the culpable act must be the proximate cause of the death. In I R. Anderson, Wharton's Criminal Law and Procedure, § 296, the author states that where homicide is predicated upon culpable negligence it must appear that the death was the natural and probable result of the culpable act. This, simply stated, is the rule of proximate cause. See Cone v. Inter County Telephone & Telegraph Co., Fla. 1949, 40 So.2d 148.
Other authorities have held that in order for a person to be guilty of involuntary manslaughter by reason of unlawful and reckless conduct, such conduct must be the legal cause of the death and define legal cause as conduct which is a substantial factor in bringing about the harm. Commonwealth v. Levin, 1957, 184 Pa.Super. 436, 135 A.2d 764.
Regardless of which rule is applied to the present case, it is our opinion that there is competent substantial evidence to support the causal connection and hence the verdict of guilty.[1] The jury in our opinion could have concluded from all the evidence relating to the width and character of the road, the weather, and visibility that had the defendant been using even slight care for the safety of others he could have seen the deceased in time to have avoided the accident.
Having determined that in the present case there is competent substantial evidence supporting the causal connection between the culpable negligence of the defendant and the death of Raymond Terry Potter, we affirm the orders appealed.[2]
Because of the importance to the bench and bar of a clear understanding of the principles by which our criminal law is to be applied and the lack of precedent in this state dealing with the problem here presented, it is our intention, upon receipt of proper application, to certify this decision under F.A.R. 4.5(c) (6), 32 F.S.A., as one passing upon a question of great public interest.
Affirmed.
CROSS and OWEN, JJ., concur.
NOTES
[1] The Pennsylvania rule appears to us to be a better statement of the element of causation. In applying the manslaughter statute, there should be no need to tie the question of causation to the doctrine of proximate cause which has been developed largely around cases involving civil liability for damages and which limits such liability to natural and probable consequences. We say this because under the definition of culpable negligence as conduct revealing a reckless disregard for the life, safety or rights of others, the probability of harm would naturally be considered as one factor which qualifies an act as culpable negligence. Therefore, once an act is shown to be culpable negligence, criminal responsibility should attach without further reference to natural and probable consequences where the act is a substantial factor in bringing about the death.
[2] While each case of this nature must be reviewed on its own unique facts and a determination made with respect thereto, we refer to Johnson v. State, Fla. 1957, 92 So.2d 651, as a case that is somewhat analogous to the fact situation presently before this court. There the evidence was held to be sufficient to sustain a conviction by the Florida Supreme Court.