664 So.2d 1004 (1995)
Alan ROSS, Appellant,
v.
STATE of Florida, Appellee.
No. 93-3493.
District Court of Appeal of Florida, Fourth District.
October 18, 1995.
Order Denying Rehearing, and Rehearing, but Certifying Conflict December 27, 1995.
*1006 John R. Howes, Fort Lauderdale, Joseph S. Oteri and James W. Lawson of Oteri, Weinberg & Lawson, Kimberly Homan and Robert L. Sheketgoff of Sheketoff & Homan, Boston, MA, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, Melvina Racey Flaherty and Melynda Melear, Assistant Attorney General, West Palm Beach, for appellee.
Order Denying Rehearing, and Rehearing En Banc, but Certifying Conflict December 27, 1995.
WARNER, Judge.
Having been convicted and sentenced for conspiracy to traffic in cocaine and conspiracy to commit first degree murder, the appellant challenges these convictions on jurisdictional grounds and for improper joinder of the counts. He claims that the state failed to prove that the statewide grand jury which indicted him had jurisdiction to return the indictment under which he was charged, requiring his discharge. Alternatively, the appellant contends that a new trial is required because the court refused to sever the charges for trial. While we hold that there is no jurisdictional defect requiring discharge of the appellant, we agree that the court erred in not severing the charges for trial, necessitating a new trial.
The appellant, Alan Ross, was the leader of a Canadian gang called the West End Gang. The original leader of the gang was Dunie Ryan, who was shot to death in 1984 in Canada. According to the state's evidence and theory of the murder conspiracy, the appellant avenged Ryan's death and took over control of the West End Gang by killing Paul April and Eddie Phillips, persons responsible for Ryan's killing. Eddie Phillips was shot by a man on the back of a motorcycle. David Singer was the person suspected of driving the motorcycle. David Singer was also the murder victim in the instant case.
After Ross took over the West End Gang, he introduced John Quitoni, a drug smuggler who lived in Florida, to Jimmy Allardyce, an associate of Ross's, for the purpose of arranging the purchase of cocaine to be shipped to Canada. Quitoni was to pick up a car with hidden cash from Canada, purchase cocaine, hide the cocaine in the car, and then Allardyce would drive the car back to Canada. Quitoni was unable to obtain the cocaine himself, but he testified that Allardyce had obtained cocaine in Miami and brought it to Quitoni in Fort Lauderdale, where they hid it in the car. After three similar transactions occurring between November 1984 and February 1985, Ross told Quitoni that he had found a better source in the Bahamas, and the first series of drug transactions terminated.
In early May of 1985, Quitoni met Ross, Allardyce, David Singer, and a man named John (later identified as Trepanier) at a hotel in Fort Lauderdale. Ross asked Quitoni to assist John in relocating to the Fort Lauderdale area. Seven to ten days later John paged Quitoni and asked him to provide a gun for a cocaine transaction he was arranging. Quitoni went to a hotel where he gave the gun to John and another man (identified as DeFosse). Quitoni also obtained bullets for the gun. The next morning John called and told Quitoni that they had killed Singer "for Alan." Singer was shot so that he would not talk about the Phillips murder. John requested Quitoni's assistance in driving DeFosse to the West Palm Beach Airport where DeFosse would leave for Canada. It was necessary for John and DeFosse to split up because the police were undoubtedly looking for the pair, as they had shot and wounded a police officer while engaged in killing Singer. Quitoni complied, and a few days later he called Ross in Canada to ascertain whether *1007 the two had arrived in Canada. According to Quitoni, Ross thanked him for his assistance.
The state also produced evidence of other drug transactions involving the appellant and other individuals. Bert Gordon and Russell Brothers testified to a smuggling scheme to import cocaine from Colombia, through the Bahamas and Nashville, to Canada. Gordon testified that this second operation was planned at the home of William Blackledge in Fort Lauderdale. Brothers testified that he flew three trips for the appellant from May 1987 to September 1987. During each trip, he would file a flight plan indicating that he would land at Fort Pierce, Florida. Instead, he would rendezvous off the coast with another pilot, who would then land in Fort Pierce to clear customs while Brothers continued to Nashville.
The third operation involved smuggling from Colombia to Europe. The drugs were shipped aboard a sailboat, The Finesse, from Colombia to Spain where the appellant's associate was to sell the cocaine. The only connection to Florida as to this operation was that The Finesse's home port was Miami. The Finesse was seized in Portugal in 1988.
The appellant first claims that the state failed to prove that the statewide grand jury had jurisdiction to return an indictment charging the appellant with trafficking in cocaine and conspiracy to commit murder. Section 905.34, Florida Statutes (1993), limits the jurisdiction of the statewide grand jury to the enumerated crimes, "when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits." In McNamara v. State, 357 So.2d 410, 413-14 (Fla. 1978), the supreme court held that allegations of multi-county activity on the face of the indictments by the statewide grand jury is essential to determine whether the grand jury had subject matter jurisdiction to indict. In the instant case, each count alleged multi-county activity. Count I alleged that the appellant and others conspired to traffic in cocaine in Marion and Broward counties. Count III alleged that the appellant and others conspired to commit first degree murder in Palm Beach and Broward counties. Under McNamara, the indictments were facially sufficient to vest jurisdiction to indict in the statewide grand jury.
Despite the facial allegations of jurisdiction, the appellant contends that the state is obligated to prove the statewide grand jury's allegations beyond a reasonable doubt, citing Justice Adkins' special concurrence in State v. Ostergard, 360 So.2d 414 (Fla. 1978). That is not precisely what Justice Adkins wrote in his concurrence. Instead, he posited that the state must prove "multi-county activity" beyond a reasonable doubt.
The appellant claims that there is no evidence of activity concerning cocaine transactions in Marion County, and therefore that the allegation was not proved. Moreover, according to the appellant, the evidence did not show beyond a reasonable doubt the existence of multi-county activity. The first series of drug transactions involving Quitoni and Allardyce involved Broward and Dade counties (the Seventeenth and Eleventh Judicial Circuits), but the appellant notes that the testimony was uncorroborated and does not rise to the level of proof beyond a reasonable doubt. The second series of drug transactions involved shipments from the Bahamas to Nashville, and the only Florida contacts occurred in Fort Lauderdale where the drug smuggling operation was planned and in Fort Pierce when the decoy plane landed in the Nineteenth Judicial Circuit. In addition, the appellant argues that a conspiracy to import cocaine from outside the United States into Tennessee is not an offense over which Florida has jurisdiction and was in fact a separate conspiracy from the Quitoni/Allardyce transactions. Finally, as to the third series of transactions involving The Finesse, the appellant contends that this too is a separate conspiracy and there is no proof of any activity in Florida which would be punishable under the laws of Florida. Therefore, he contends Florida has no jurisdiction to punish the offense.
While lumped together in one point on appeal, these arguments actually involve three separate lines of inquiry. First, did the state prove multi-county activity for the statewide grand jury to indict, even though *1008 there was a variance between the proof and the allegations of the indictment? Second, did the state prove a crime punishable under Florida law? Third, were the three drug transactions properly joined in one count as a single conspiracy to traffick in cocaine?
The first question is most easily disposed of. Florida Rule of Criminal Procedure 3.140(o) provides:

(o) Defects and Variances. No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.
The proof at trial must substantially conform to the allegations of the indictment or information in order that the defendant not be prejudiced in the preparation of a defense or subject him to reprosecution for the same offense. Grissom v. State, 405 So.2d 291 (Fla. 1st DCA 1981). However, an objection to a variance between the allegata and probata must be raised to the trial court either through a motion to dismiss or a motion for judgment of acquittal. Where there is no objection in the trial court, the issue is not preserved for review on appeal. Sharp v. State, 328 So.2d 503 (Fla. 3d DCA 1976). In the instant case, the appellant never challenged the state's case on these grounds. Nor can we detect that the appellant was prejudiced in his preparation of his defense. In fact, it appears that the defendant, having been tried and convicted on similar federal charges,[1] was well aware of what the state intended to prove. There was no claim of prejudice made, because there was none.
With respect to the separate drug smuggling operations, we have no trouble finding that the first series of drug transactions constituted multi-county activity showing the purchase of cocaine in the state of Florida. While the appellant complains that the evidence of the operation was all hearsay, there was no objection to it at trial. The evidence showed the purchase and possession of drugs in Dade and Broward Counties.
The second transaction involved the importation of drugs to Tennessee from the Bahamas. The only involvement with Florida constituted a meeting discussing the conspiracy in Fort Lauderdale and the landing of a decoy plane in Fort Pierce. The appellant and his co-conspirators were charged with a violation of section 893.135(1)(b)3, Florida Statutes (1987):
Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine as described in s. 893.03(2)(a)4 or of any mixture containing cocaine is guilty of a felony of the first degree which felony shall be known as "trafficking in cocaine." If the quantity involved:
3. Is 400 grams or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and to pay a fine of $250,000.
Section 910.005(1)(d), Florida Statutes (1987), provides that a person can be prosecuted for an offense he commits within or outside of the state if "the conduct [committed] within the state constitutes an attempt or conspiracy to commit in another jurisdiction an offense under the laws of both this state and the other jurisdiction." Conspiring to possess, sell or deliver cocaine is an offense under Tennessee law. Tenn. Code Ann. § 39-17-417(a)(4), (j)(5) (1994). The issue is whether conspiring to import drugs to Tennessee is a violation of Florida law. In Bragg v. State, 487 So.2d 424, 426 (Fla. 5th DCA 1986), the fifth district held that since section 893.135(1)(a) only prohibited sale, manufacture, delivery, possession and importation into this state, a conspiracy to import *1009 marijuana into Kentucky was not a violation of the statute and therefore could not be prosecuted in Florida, even though the planning of the conspiracy commenced here.
The state asks us to reject the reasoning in Bragg and rely instead on Carone v. State, 361 So.2d 437 (Fla. 2d DCA 1978). In that case, the appellant was charged with conspiracy to possess marijuana. The marijuana was destined for Michigan and never was present in Florida, although the appellant made payment for the marijuana in Florida. The second district looked to section 910.005(1)(d) in holding that the crime was subject to prosecution in Florida, noting that possession of marijuana was a crime in both Michigan and Florida.
At the time of the offense in Carone, Florida did not have a trafficking statute. Instead, the only statute under which the appellant in Carone could have been prosecuted was section 893.13(1)(a), Florida Statutes (1977). That section made it unlawful for any person to sell, manufacture, or deliver a controlled substance. In 1982, the Legislature passed section 893.135, quoted above, which prohibited trafficking in controlled substances. The Bragg court construed the statute's prepositional phrase "into this state" as modifying each and every verb in the phrase: "possess," "manufacture," "sell," "purchase," "deliver," and "bring." We, however, construe the phrase as only modifying the verb "bring." First, the subsequent phrase, "knowingly in actual or constructive possession of, 28 grams or more of cocaine," is not qualified by the phrase "into this state." It would seem a strange result to punish conspiracies to sell, purchase, manufacture, and deliver cocaine only if they were within this state but to punish conspiracies to possess cocaine anywhere, so long as one of the elements of the offense occurred in Florida. See § 910.005(2), Fla. Stat. (1987). Second, the grammatical construction does not suggest that the phrase modifies any other verb. For instance, one would not sell into this state: one would sell in this state. Third, our result is in conformance with the application of the statutory rules of construction known as the doctrine of last antecedent. As explained in Kirksey v. State, 433 So.2d 1236, 1241 (Fla. 1st DCA 1983), "relative and qualifying words or phrases are to be applied to the words, phrases and clauses immediately preceding, and are not to be construed as extending to or including others more remote," quoting McKenzie Tank Lines v. McCauley, 418 So.2d 1177, 1179-80 (Fla. 1st DCA 1982). Based on our construction, we conclude that trafficking in cocaine which is destined for a location outside this jurisdiction may be a violation of this statute so long as the requirements for prosecution set forth in section 910.005 are met.
The charge against the appellant was not trafficking but conspiracy to traffic. Only offenses committed partly in Florida can be punished under Florida law. Section 910.005(2) states:
An offense is committed partly within this state if either the conduct that is an element of the offense or the result that is an element occurs within the state.
In the case of a conspiracy, the agreement between the co-conspirators is an essential element of the crime. King v. State, 104 So.2d 730 (Fla. 1957); Herrera v. State, 532 So.2d 54, 58 (Fla. 3d DCA 1988). In this case that agreement was reached at a meeting in Fort Lauderdale. Therefore, we hold that the act of holding a meeting at which the conspiratorial agreement is formed constitutes conduct within this state which is an essential element of the crime. As such, Florida had jurisdiction to prosecute as to the second series of drug transactions.
We reach the opposite conclusion as to the third series of transactions. The state did not prove any act occurring in Florida in furtherance of The Finesse drug smuggling operation. The entire operation occurred outside the territorial jurisdiction of the United States. While The Finesse's home port was Miami, there was no testimony that The Finesse had sailed from Miami to pick up drugs in Colombia. There was no evidence that the conspiratorial agreement was entered into in Florida.
We also agree with the appellant that the three drug transactions were not simply part of one overall conspiracy. While each was related to the appellant, each involved *1010 different participants, different locations, and different purposes. One was to import cocaine from Florida to Canada in 1985, using Quitoni and Allardyce. The second was to import cocaine from Colombia to Tennessee and into Canada, using Gordon and Brothers. The conspiratorial agreement was arrived in Fort Lauderdale in 1987. The third was to import cocaine from Colombia to Europe in 1987-88 using other conspirators. The state cites United States v. Gonzalez, 940 F.2d 1413 (11th Cir.1991), for the proposition that a single conspiracy may be found where there is a "key man" involved who directs various other combinations of persons. However, in Gonzalez, the modus operandi of the smuggling operation was the same, and the each transaction was the importation of cocaine into Florida. In the instant case each transaction was entirely different, as was the conspiratorial agreement. See May v. State, 600 So.2d 1266, 1268 (Fla. 5th DCA 1992); Donovan v. State, 572 So.2d 522, 528 (Fla. 5th DCA 1990); Griffin v. State, 611 So.2d 20 (Fla. 1st DCA 1992); Aiello v. State, 390 So.2d 1205, 1207 (Fla. 4th DCA 1980).
Since the state relied heavily on the trio of conspiracies to convict the appellant of trafficking in cocaine, one of which did not constitute a crime punishable under Florida law, we cannot conclude that the presentation of the other conspiracies did not hopelessly taint the trial as to the offenses punishable by Florida law. It was not harmless error and requires reversal for a new trial.
With respect to Count III, the indictment alleged multi-county activity and specifically alleged that the conspiracy to murder David Singer included the planning of the murder, its perpetration, and the plan of escape from the murder scene. As the state alleged multi-county activity, namely escape, as part of the conspiracy, we hold that it did allege sufficient multi-county activity to show jurisdiction in the statewide grand jury. We can find no authority that the planned escape from the murder scene is not part of a continuing conspiracy to commit murder.
We do agree, however, that it was error for the court to deny severance of the cocaine trafficking charge from the murder conspiracy charge. While Florida Rule of Criminal Procedure 3.150(a) permits the joinder of two or more offenses when the offenses are based on the same act or transaction or two or more connected acts or transactions, the supreme court has set forth rules regarding proper joinder of offenses for trial:
First, for joinder to be appropriate the crimes in question must be linked in some significant way. This can include the fact that they occurred during a "spree" interrupted by no significant period of respite, Bundy [v. State, 455 So.2d 330 (Fla. 1984)], or the fact that one crime is causally related to the other, even though there may have been a significant lapse of time. Fotopoulos [v. State, 608 So.2d 784 (Fla. 1992)]. But the mere fact of a general temporal and geographic proximity is not sufficient in itself to justify joinder except to the extent that it helps prove a proper and significant link between the crimes. Crossley.

Ellis v. State, 622 So.2d 991, 1000 (Fla. 1993). The instant case provides no justification for joinder. The crimes were entirely separate. While the West End Gang in Canada was involved in general drug smuggling operations, there was no connection between any of the drug smuggling operations which formed the basis for the charges in the trafficking count and the murder of David Singer. Singer was in no way related to any of the drug smuggling transactions. Moreover, the Tennessee drug operation and the Finesse operation both occurred after the murder and therefore could not possibly have figured into the murder conspiracy. There was no causal relation between the offenses, nor were they part of a crime "spree." The state's theory was that Singer was killed because he could be a witness to Ross's involvement in murders in Montreal, not because of involvement in any drug smuggling operations.
The joinder of these offenses for trial was not harmless. As the court in Crossley v. State, 596 So.2d 447 (Fla. 1992), pointed out:
The danger in improper consolidation lies in the fact that evidence relating to each of the crimes may have the effect of bolstering *1011 the proof of the other. While the testimony in one case standing alone may be insufficient to convince a jury of the defendant's guilt, evidence that the defendant may also have committed another crime can have the effect of tipping the scales.
Id. at 450. We find that that reasoning certainly applies in this case where almost all of the witnesses to each offense were convicted drug smugglers who were testifying for leniency on their own sentences and whose credibility was substantially attacked by the defense. The testimony as to the one crime bolstered the suggestion of guilt as to the other.
As to the remaining points on appeal, we find no reversible error. The evidentiary points were either not preserved or were harmless, and we affirm as to the statute of limitations defense.
We therefore reverse the convictions and sentences and remand for new trials consistent with this opinion, severing the drug charges from the murder charge.
FARMER and KLEIN, JJ., concur.

ON MOTION FOR CERTIFICATION, AND REHEARING, AND REHEARING EN BANC
PER CURIAM.
We deny all motions for rehearing and rehearing en banc but certify conflict with Bragg v. State, 487 So.2d 424 (Fla. 5th DCA 1986).
WARNER, FARMER and KLEIN, JJ., concur.
NOTES
[1] Appellant was convicted in federal court of drug trafficking, for which he is currently serving three life sentences without possibility for parole. See United States v. Ross, 33 F.3d 1507 (11th Cir.1994).