ROTHENBERG, J.
The State of Florida (“the State”) appeals the trial court’s final order granting Israel Tacher and Julio Pedroso’s (collectively, “the co-defendants”) motion to dismiss for lack of jurisdiction. We reverse.

THE FACTS

For the purpose of determining the sole issue on appeal, i.e., whether the Office of Statewide Prosecution (“OSP”) has the au *1132 thority to prosecute the co-defendants in this case, the facts are undisputed. The State alleges that the co-defendants and two uncharged co-conspirators, Ricardo Olmedo and Bryant Olmedo (collectively, “the Olmedos”), conspired to and did traffic in contraband legend drugs. In then-sworn affidavits, the Olmedos explained that Bryant Olmedo would purchase and retrieve the contraband drugs[1] from a drug dealer in New Jersey, and then personally transport them to Miami-Dade County by bus, traveling the length of Florida via 1-95, 1-4, and the Turnpike. When Bryant Olmedo reached Miami-Dade County, he delivered the drugs to Ricardo Olmedo, who would then deliver the drugs to the co-defendants. The co-defendants, in turn, sold the drugs to others.
The OSP charged the co-defendants in a consolidated information with Count 1: racketeering; Count 2: conspiracy to commit racketeering; Count 3: organized scheme to defraud; Count 4: trafficking in contraband legend drugs; Count 5: conspiracy to traffic in contraband legend drugs; and Count 6: money laundering.
Defendant Tacher filed a motion to dismiss, arguing that the OSP lacked jurisdiction.[2] Pursuant to section 16.56(l)(a), Florida Statutes (2009), the OSP has the authority to prosecute an enumerated offense “only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits.” The crux of Tacher’s motion to dismiss, although incorrectly characterized as an issue of the OSP’s jurisdiction rather than its authority, was that the OSP failed to meet the requirements of section 16.56(l)(a) because all of the events comprising the crimes alleged in the information occurred in Miami-Dade County.
The OSP filed a response supported by the affidavits executed by the Olmedos, contending that section 16.56(l)(a)’s requirements were met because Bryant Olmedo, the uncharged co-conspirator, traveled by bus through seven judicial circuits while possessing the drugs in furtherance of the conspiracy. The trial court granted the defendants’ motion to dismiss, finding that “the casual passing of a bus through one or more Florida Counties does not satisfy the requirement in Winter[3] that there be ‘some clear proof of an actual impact in other judicial circuits to satisfy the requirement that two or more circuits be affected.’ ”
In its motion for rehearing, the State argued that the transportation of illegal pharmaceutical drugs through the entire eastern section of the state constituted an actual crime in every circuit traveled, not merely activity in furtherance of a conspiracy. The trial court denied the State’s motion for rehearing, and this appeal followed.

LEGAL ANALYSIS

We review a trial court’s order on a motion to dismiss de novo where, as here, it concerns a question of law. Ehrlick v. State, 898 So.2d 237, 238 (Fla. 4th DCA 2005). Under section 16.56, the OSP has the authority to “investigate and prose *1133 cute” an offense enumerated in subsection 16.56(l)(a) “only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits.” (emphasis added). As is clear, this provision sets forth two separate theories upon which the OSP’s investigative and prosecu-torial authority may be realized, and the satisfaction of either confers the requisite authority to the OSP. The trial court focused on the second theory and found the OSP did not meet the statutory requirements under that theory. However, we conclude the OSP did meet the statutory requirements under the first theory and thus has the authority to prosecute the co-defendants for the charged offenses in Miami-Dade County.

The charging document (information) alleges multi-countg criminal activitg

The information charges the co-defendants with committing six related felony offenses “occurring in, or in connection with an organized criminal conspiracy affecting two or more judicial circuits.” Additionally, in Counts 1 and 2, the information further identifies the predicate acts the OSP is relying on in each count, some of which are alleged to have occurred in more than one Florida judicial circuit. It is clear, and the co-defendants do not dispute, that sufficient allegations of multi-county criminal activity appear on the face of the information, initially satisfying the requirements of section 16.56(l)(a), and establishing the OSP’s authority to prosecute the charged offenses in Miami-Dade County.[4]

There is evidence to support the exercise of the OSP’s authoritg under section 16.56(1) (a)

Although the co-defendants concede that the information satisfies the statutory requirements for the exercise of the OSP’s authority to prosecute the charged offenses, the co-defendants claim: (1) there is no evidence that any of the charged offenses occurred in any county other than Miami-Dade County; and (2) there is no evidence that the organized criminal conspiracy allegedly committed by the co-defendants “affected” two or more judicial circuits. Thus, they contend the evidence does not support either theory upon which the OSP may exercise its authority under section 16.56(l)(a). We disagree.
A. The OSP satisfied its burden under the first theory
The OSP possesses the authority to prosecute the charged offenses under the first theory provided in section 16.56(l)(a) if the offenses occurred in two or more judicial circuits as part of a related transaction. As already addressed, each count alleges that the charged offense was part of a related transaction occurring in more than one Florida circuit, and there is no dispute that the charged offenses are related transactions. Additionally, Count 1 charges the co-defendants and others with racketeering (engaging in an ongoing criminal enterprise over a three-and-one-half year period), and lists as predicate acts each of the acts charged in Counts 4 (trafficking in contraband legend drugs), 5 (conspiracy to traffic in contraband legend drugs), and 6 (money laundering), and ad *1134 ditionally lists mail fraud as a predicate act. Count 1 charges the co-defendants and others with conspiracy to commit racketeering and lists the same predicate acts in support of the charge. Count 3 charges the co-defendants and others with engaging in a systematic scheme to defraud prescription drug users over nearly a three-year period.
The co-defendants, and the trial court, however, focused on Count 4, which alleges that the co-defendants, along with the Olmedos and others, “did knowingly purchase or sell, or was in actual or constructive possession of contraband legend drugs valued at more than $25,000.” Although the case has not yet been tried, the co-defendants argue that the only evidence the State possesses in support of this charge is Bryant Olmedo’s possession and transportation of the contraband pharmaceutical drugs while riding on a bus through various Florida judicial circuits and the ultimate delivery of the pharmaceutical drugs to the co-defendants in Miami-Dade County. The co-defendants and the trial court, however, failed to consider that Count 4 is related to the other crimes charged and is but one cog in the overall scheme and criminal enterprise of the various charged and uncharged perpetrators, and that while each of the perpetrators played a different role in the criminal enterprise, they were acting in concert, one with the other. For example, in an affidavit signed by Ricardo Olmedo, he averred he located and obtained the suppliers of the contraband; his son, Bryant Olmedo, transported the contraband by bus from New Jersey through Florida and ultimately to Miami-Dade County; and the co-defendants supplied the Olmedos with customers for the contraband. In other words, the co-defendants served as the middlemen or conduits to the end-users in the criminal enterprise. Bryant Olmedo, in his affidavit, confirmed his role in the criminal enterprise and further stated that he delivered the contraband to co-defendant Tacher.
Thus, although it was not the role of these co-defendants to serve as the couriers from New Jersey to Miami-Dade County, it is alleged, and there are witnesses who are prepared to testify, that it was the role of these co-defendants to serve at the end of the chain as the conduit to the end-users and thus to complete the actual delivery of the contraband to the intended customers. It is also alleged as part of the predicate acts, that these co-defendants helped launder the money obtained through this criminal enterprise.
Based on these facts, we conclude there is sufficient evidence to establish the OSP’s authority under the first theory provided in section 16.56(l)(a). The information and supporting evidence reflect that these co-defendants were an integral part of the overall criminal enterprise that included the purchase of contraband pharmaceutical drugs from suppliers in New Jersey, which was transported by bus through various Florida judicial circuits by a co-perpetrator, and delivered in Miami-Dade County to the co-defendants, who sold the drugs to others and laundered the money.
B. The OSP’s burden under the second theory
In order to survive a motion to dismiss under the second theory provided in section 16.56(l)(a), the State must allege that the charged offense is “connected with an organized criminal conspiracy affecting two or more judicial circuits.” The trial court, relying on Winter, granted the co-defendants’ motion to dismiss based on its finding that the State did not meet its burden in establishing its authority under this particular theory. In Winter, the *1135 First District held that “[a]bsent some clear proof of an actual impact in other judicial circuits, the statutory requirement of ‘affecting two or more circuits’ is not satisfied.” Id. at 1116. As we have already determined that the OSP’s authority was established under the “occurring in two or more judicial circuits” test, we do not need to address nor must the State demonstrate whether the OSP established its authority under the alternative “connected with an organized conspiracy affecting two or more judicial circuits” test. Nonetheless, we address this alternate test, and we conclude the trial court erred in determining that the OSP did not establish its authority under this theory.
First, we note that Winter is clearly distinguishable. In Winter, all of the crimes charged took place only in the Second Judicial Circuit. Thus, the OSP’s authority only existed if the crimes charged were “connected with an organized criminal conspiracy affecting two or more judicial circuits.” Winter, 781 So.2d at 1115. The sole basis relied on by the State for satisfying this requirement in Winter was that the money stolen by the defendant came from a state workers’ insurance fund and the state has employees all over Florida. Based on the State’s concession that the defendant’s acts all occurred in Leon County and the fund was housed in Leon County, and the Winter court’s conclusion that there was no proof of an actual impact in other judicial circuits, the Winter court held that the statutory requirement of “affecting two or more circuits” was not satisfied. Id. at 1116.
In the instant ease, the crimes did not take place only in Miami-Dade County, and because a co-perpetrator possessed and transported contraband through several different judicial circuits and was therefore susceptible to prosecution in any of those judicial circuits in which he transported the contraband, we conclude that the “affecting two or more circuits” requirement was met. See King v. State, 790 So.2d 477, 479 (Fla. 5th DCA 2001) (concluding the OSP had the authority to prosecute burglary charges that occurred in a single judicial circuit, where the burglary was part of a business enterprise (the operation of a chop shop) that was located in another judicial circuit);. Suiero v. State, 248 So.2d 219, 224 (Fla. 4th DCA 1971) (holding that “a prosecution for a criminal conspiracy may be brought in the county where the unlawful combination is formed or in any county where the overt act is committed by any of the conspirators in furtherance of the unlawful confederacy”).
Ross v. State, 664 So.2d 1004 (Fla. 4th DCA 1995), is also instructive. Ross challenged his convictions for conspiracy to traffic in cocaine and conspiracy to commit first degree murder, charged by indictment by the statewide grand jury. The Fourth District concluded that the murder charge should have been severed; each of the three drug transactions involved three separate conspiracies as they involved different participants, different locations, and different purposes; and although two of the drug transactions involved multi-county Florida activity to establish jurisdiction by the statewide grand jury, one did not. Id. at 1009-10. Specifically, the Fourth District concluded that statewide prosecution was proper for the transactions occurring in the first and second operations. In the first operation, the defendant obtained cocaine in Miami and brought it with him to Fort Lauderdale, where it was hidden in a car and the car 'was later driven to Canada. Id. at 1006. The second operation was planned in Fort Lauderdale, and involved the defendant and others in a smuggling scheme to import cocaine from Colombia, through the Bahamas and Nash *1136 ville, to Canada. Id. at 1007. A co-perpetrator, Russell Brothers, testified that he flew three trips for Ross and on each trip he would file a flight plan indicating he would be landing at Fort Pierce, Florida, but would, instead, rendezvous off the coast with another pilot, who would land in Fort Pierce to clear customs while Brothers transported the drugs to Canada. Id. at 1007. The Fourth District concluded that the acts of meeting in Fort Lauder-dale to discuss the conspiracy and the landing of a decoy plane in Fort Pierce satisfied the jurisdictional requirements for statewide prosecution, even though no drugs were transported into or through a Florida judicial circuit. Id. at 1008.
Based on the above cited cases, we conclude the OSP established its authority to prosecute the charged crimes under the second theory provided in section 16.56(l)(a), even though it was not required to as a result of having satisfied the requirements of the first theory. The trial court, therefore, erred in dismissing the charges.
We also conclude the procedure used to attack the OSP’s authority to prosecute the charged offenses may have led the trial court to err. We suggest that such a motion be filed as a sworn motion to dismiss, similar to those filed under rule 3.190(c)(4), Florida Rules of Criminal Procedure, and stating that there are no material disputed facts and the undisputed facts do not establish the authority of the OSP to prosecute the charged offenses. Upon the filing of such a motion, the OSP may traverse or demur to the motion, and unless specifically denied by the OSP in the traverse, the factual matters alleged in the motion to dismiss shall be considered admitted. If the OSP flies a traverse that, with specificity, denies under oath the material fact or facts alleged in the sworn motion to dismiss, the motion shall be denied. If the OSP files a demur or otherwise admits the factual allegations, the trial court should conduct a hearing to address the merits of the motion. We believe this procedure will provide the trial court with a more complete recitation of the facts, better enable the trial court to make an informed decision, and provide this Court with a more complete record.
Reversed and remanded with instructions to reinstate the information.

.The pharmaceutical drugs became illegal as a result of being stolen, procured from illegal returns, purchased from beneficiaries of welfare programs, repackaged from expired lots, illegally imported, or counterfeited.

. Defendant Pedroso adopted the motion to dismiss.

. Winter v. State, 781 So.2d 1111 (Fla. 1st DCA 2001).

. We note that because the instant offenses were charged by information rather than by indictment issued by a statewide grand jury, and allegations of multi-county activity appear on the face of the information, the information does not run afoul of this Court's opinion in State v. Ostergard, 343 So.2d 874, 877 (Fla. 3d DCA 1977), which holds that absent proper jurisdictional allegations on the face of the indictments, the statewide grand jury was without authority to indict the appel-lees.