# Third District Court of Appeal

## State of Florida

Opinion filed July 17, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-2180
Lower Tribunal No. F22-15012
_____

**The State of Florida,**
Appellant,

vs.

**Ronald Lee Miller,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Laura Anne Stuzin, Judge.

Ashley Moody, Attorney General, and Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and Alison E. Preston, Deputy Solicitor General (Tallahassee), for appellant.

Robert I. Barrar, P.A., and Robert I. Barrar, for appellee.

Reed Smith LLP, and M. Patrick Yingling (Chicago, IL) and Wesley A. Butensky, for the Niskanen Center and former Florida State Senator Jeff Brandes, as amici curiae.

American Civil Liberties Union, and Julie A. Ebenstein and Casey Smith (New York, NY); Proskauer Rose LLP, and Matthew Triggs (Boca Raton); Brennan Center for Justice at NYU School of Law, and Patrick Berry (New York, NY); ACLU Foundation of Florida, and Nicholas L.V. Warren (Tallahassee), Caroline A. McNamara and Daniel B. Tilley; NAACP Legal Defense and Educational Fund, Inc., and Leah C. Aden (New York, NY), for the American Civil Liberties Union, Brennan Center for Justice at NYU School of Law, American Civil Liberties Union of Florida, and NAACP Legal Defense and Educational Fund, Inc., as amici curiae.

Dianne Carames; Daniel Tibbitt, for the Florida Association of Criminal Defense Lawyers-Miami Chapter, as amicus curiae.

Quinn Emanuel Urquhart & Sullivan, LLP, and Sascha N. Rand (New York, NY), Samuel G. Williamson and Thomas S.P. Geeker, for the Association of Prosecuting Attorneys, as amicus curiae.

Reid Levin, PLLC, and Reid Levin (Boca Raton); Akin Gump Strauss Hauer & Feld LLP, and James E. Tysse (Washington, D.C.), and David Giller and Caitlin E. Olwell and Andrew A. McWhorter (New York, NY), for Former Members of the Commission on the Statewide Prosecution Function, as amici curiae.

Toth Funes PA, and Freddy Funes; Willkie Farr & Gallagher LLP, and James C. Dugan and Ferdinand G. Suba, Jr., (New York, NY), and Noorjahan Rahman (San Francisco, CA); Quinn Yeargain (Harrisburg, PA), for State Constitutional Law Scholars Robert F. Williams and Quinn Yeargain, as amici curiae.

Davis Wright Tremaine LLP, and David Gossett and Matthew R. Tuchman (Washington, D.C.) and MaryAnn Almeida (Seattle, WA) and Rachel R. Goldberg (Los Angeles, CA), for the Due Process Institute, as amicus curiae.


Before SCALES, GORDO and BOKOR, JJ.

BOKOR, J.

2

The State, through information filed in the Eleventh Judicial Circuit by the Office of Statewide Prosecution, charged Ronald Lee Miller with voter fraud based on both Miller's allegedly false affirmation on his voter registration that he was eligible to vote and his subsequent voting as an unqualified elector. Miller moved to dismiss, claiming the Statewide Prosecutor lacked authority to bring the charges because the alleged acts don't trigger the statutory prerequisite that the offense "occurred[] in two or more judicial circuits as part of a related transaction." § 16.56(1)(a), Fla. Stat. (2020). The trial court agreed with Miller and granted the motion to dismiss, which the State appeals. So, does the act of filling out a voter registration in one jurisdiction, and voting in that same jurisdiction, constitute an offense occurring in two or more judicial circuits as part of a related transaction? Based upon the plain reading of the statutory language and relying on the jurisdictional stipulation of facts agreed to by the parties and ratified by the trial court, we answer the question in the affirmative and conclude that the Statewide Prosecutor possessed the authority to charge Miller.[1]

---

[1] The relevant statute was subsequently amended to grant the Statewide Prosecutor clearer and broader authority. See Ch. 2023-2, § 1, Laws of Fla. The State argues that such grant of authority applies retroactively. However, because we conclude that the operative statute at both the time of the offense and the filing of the information permitted prosecution by the Statewide Prosecutor, we decline to address the issues of retroactivity and application of the amended statute.

## BACKGROUND

The Office of Statewide Prosecution charged Miller by information with one count of making false affirmations in connection with an election and one count of voter fraud, pursuant to sections 104.011 and 104.15, Florida Statutes (2020). The information alleged that Miller registered to vote and voted in Miami-Dade County in October 2020, despite knowing he was not an eligible elector. The information also alleged that the charges stemmed from related acts occurring in both Miami-Dade County and Leon County.

Miller moved to dismiss for lack of subject matter jurisdiction, pursuant to Florida Rule of Criminal Procedure 3.190, contending that the Office of Statewide Prosecution lacked jurisdiction to prosecute the claims under section 16.56(1) because the charged acts occurred solely in Miami-Dade County (Eleventh Judicial Circuit). The parties stipulated to a joint statement of facts for use in the jurisdictional hearing before the trial court. The parties stipulated that the charges related to Miller having registered to vote and voted in Miami-Dade County in 2020. Further, the parties stipulated that Miller's voter registration was submitted by a third-party organization to the Broward County Supervisor of Elections (Seventeenth Judicial Circuit), which in turn forwarded the information to the Florida Secretary of State in Leon County (Second Judicial Circuit) to process Miller's registration. The

parties agree that Miller never physically entered or personally transferred anything into the Second or Seventeenth judicial circuits. The State also acknowledged that the charges do not allege a criminal conspiracy, but instead argued that the transmission of the voter registration to Broward and Leon Counties and the subsequent transmission of approval from the Secretary of State in Leon County to the Supervisor of Elections in Miami-Dade County (and Miller ultimately voting in Miami-Dade County, which vote was forwarded back to the Department of State's Division of Elections in Leon County) constituted acts and related transactions occurring in multiple jurisdictions.

On December 7, 2022, the trial court granted dismissal of both charges, finding that the Office of Statewide Prosecution lacked jurisdiction to bring the charges because the charged acts occurred only in Miami-Dade County and did not allege either a multijurisdictional criminal conspiracy or any acts committed by Miller in multiple jurisdictions. The State timely appealed the dismissal.

## LEGAL ANALYSIS

The sole issue for review is whether Miller's registering to vote in Miami-Dade County, and subsequent voting in Miami-Dade County, invoke

the jurisdiction of the Office of Statewide Prosecution.[2] To do so, we examine whether the processing of the voter registration in another jurisdiction, Leon County, with approval conveyed back from Leon County to Miami-Dade County, and the subsequent voting in Miami-Dade County and conveying of the votes to Leon County constituted offenses which "occurred[] in two or more judicial circuits as part of a related transaction." § 16.56(1)(a), Fla. Stat. (2020).

While we review the plain meaning of the words in the statute, we do so not in isolation, but rather in the context of the entire statutory provision. As explained recently by the Florida Supreme Court:

> Before explaining our answer to the certified question, we address a threshold issue about Florida's law of statutory interpretation. The United States encourages us to use an approach that is often linked to a passage from our Court's decision in *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 102 Fla. 1141, 137 So. 157, 159 (1931)). There we said that "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction." In practice, following this maxim often leads the interpreter to focus on a disputed word or phrase in isolation; the maxim also leaves the interpreter in

---

[2] We review de novo the trial court's order granting the motion to dismiss based on the Statewide Prosecutor's authority. See State v. Espinoza, 264 So. 3d 1055, 1062 (Fla. 3d DCA 2019) ("The standard of review for a trial court's order based on statutory interpretation is de novo. Further, the standard of review for a trial court's order regarding a Rule 3.190(c)(4) motion to dismiss is de novo." (citation and italics omitted)).

6

the dark about how to determine whether a particular word or phrase has a clear meaning.

We believe that the *Holly* principle is misleading and outdated. More recently our Court has said that judges must "exhaust 'all the textual and structural clues'" that bear on the meaning of a disputed text. *Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022) (quoting *Niz-Chavez v. Garland*, —— U.S. ——, 141 S. Ct. 1474, 1480, 209 L.Ed.2d 433 (2021)). That is because "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

Viewed properly as rules of thumb or guides to interpretation, rather than as inflexible rules, the traditional canons of statutory interpretation can aid the interpretive process from beginning to end (recognizing that some canons, like the rule of lenity, by their own terms come into play only after other interpretive tools have been exhausted).

Conage v. United States, 346 So. 3d 594, 598 (Fla. 2022). In performing such an analysis, we review the plain meaning of the words at issue and read the relevant provision (i.e., whether "any such offense. . . occurred[] in two or more judicial circuits a part of a related transaction") in context with the entire statutory provision. The statute includes language in section 16.56(1)(a)(12) that the office may "[i]nvestigate and prosecute the offenses of . . . [a]ny crime involving voter registration, voting, or candidate or issue petition activities." We therefore conclude, based on the plain language of the jurisdictional charge, read in the entire statutory context, that the statute

7

confers jurisdiction on the Office of Statewide Prosecution to prosecute the crimes as alleged.

To show our work in carrying out the understanding of statutory construction set forth in Conage, we look at the plain language of the entire statute and the common understanding of the terms at issue. The term "transaction" generally refers to some reciprocal action or exchange involving *multiple* parties. See Transaction, Black's Law Dictionary (11th ed. 2019) ("**1**. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. **2**. Something performed or carried out; a business agreement or exchange. **3**. Any activity involving two or more persons."). The term "transaction" here is also modified by the terms "related" and "part of," both of which also connote the involvement of multiple acts or actors. See Related, Black's Law Dictionary (11th ed. 2019) ("Connected in some way; having relationship to or with something else. . . ."); Part, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/part (last visited May 30, 2024) ("[O]ne of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole . . . an essential portion or integral element . . . one of several or many equal units

8

of which something is composed or into which it is divisible . . . an amount equal to another amount.").

Miller would not have been able to register to vote, and ultimately vote, without his filling out the form in Miami-Dade County, the processing and approval of his voter registration in Leon County, and the conveyance of such approval back to Miami-Dade County.[3] It makes no difference based on the statutory language whether Miller himself communicated or affirmatively acted in concert with anyone outside of Miami-Dade County. Indeed, the parties stipulated that he did no such thing. The important part, however, is that these transactions that occurred in multiple jurisdictions were not only related, but they were also required acts before Miller got his voter registration and proceeded to vote.[4]

---

[3] Additionally, and as stipulated by the parties, Miller's voter registration was originally erroneously forwarded by a third-party voter registration organization in Miami-Dade County to Broward County's Supervisor of Elections, which forwarded the information to the Secretary of State in Leon County, which forwarded the approval back to Miami-Dade County's Supervisor of Elections. The analysis would be the same if the original organization had properly submitted the registration to the Miami-Dade County Supervisor of Elections as it would still involve processing, communication, and transmission to and from the Secretary of State in Leon County.

[4] The dissent takes issue with our analysis of the related transaction language in the statute. See Dissent at 2–3. No one disputes that Miller acted only in one county. But the dissent doesn't explain why a related transaction in another county in another circuit in the context of the *commission* of a criminal act fails to convey jurisdiction on the Statewide Prosecutor. Instead,

9

It doesn't matter that Miller may not have intended to set off a chain of related events in other jurisdictions in order to vote. As explained by the United States Supreme Court, "[w]here one does an act with knowledge" that a chain of events to complete the aim of the act "will follow in the ordinary course of business, or where such . . . can reasonably be foreseen, even though not actually intended, then he 'causes'" the related chain of events. Pereira v. United States, 347 U.S. 1, 8–9 (1954).[5] For example, when a party requests that a financial institution wire funds from one bank account to

---

the dissent concludes that because Miller's affirmative acts occurred in one jurisdiction, "[s]ection 16.56(1)(a)'s 'as part of a related transaction' language is not implicated." Dissent at 4. Here, the transmission to, and processing of, the voting form in Tallahassee, Leon County, constituted a related transaction, in this case a necessary act, but for which the crime as alleged wouldn't have occurred. In other words, while Miller himself acted only in one jurisdiction, the chain of events that led to the consummation of the crime necessarily occurred in two or more jurisdictions. See State v. Tacher, 84 So. 3d 1131, 1135 (Fla. 3d DCA 2012) (noting that "the crimes did **not** take place only in Miami-Dade County"). Indeed, the dissent's analysis suffers from a rigid parsing of the statutory language divorced from "the specific context in which that language is used, and the broader context of the statute as a whole." Conage, 346 So. 3d at 598 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).

[5] The dissent argues that the majority improperly "imports tort concepts into its analysis" of a criminal statute. Dissent at 5. We note, however, that Pereira is a criminal case discussing foreseeability and causation. Additionally, we don't examine foreseeability or causation in the context of tort liability, nor to suggest that foreseeability is a requirement here, but rather as a vehicle to explain the relatedness of the transactions at issue here. As explained, the transactions occurring in other jurisdictions were not only related to Miller's acts; they were necessary predicates to his registration, voting, and, ultimately, the tabulation and counting of his vote.

another person's account at a different bank, it would be reasonably foreseeable that requesting the wire transfer could trigger a series of related transactions across multiple servers and multiple jurisdictions. Indeed, such related acts would be required to realize the sender's request, even if the sender didn't know the specific processes or technicalities involved. See id. at 9 (explaining that where a defendant delivered a check drawn on an out-of-state bank to a local bank for collection, "he 'caused' it to be transported in interstate commerce" because "[i]t is common knowledge that such checks must be sent to the drawee bank for collection and it follows that [the defendant] intended the [local] bank to send this check across state lines").

Similarly, here, it is not only reasonably foreseeable that a voter registration submitted to a third-party organization would be processed by local and state officials, including the appropriate office in the state capital, but it is a required part of the transaction to allow Miller to register to vote. See § 97.053(2), Fla. Stat. ("A voter registration application is complete and becomes the official voter registration record of that applicant when all information necessary to establish the applicant's eligibility . . . is received by a voter registration official and verified pursuant to subsection (6)."); id. (6) (explaining that a voter registration application "may be accepted as valid only after the [Florida Department of State] has verified the authenticity" of

11

identifying information provided by the applicant).[6] Such a chain of events from filling out the forms to the voting and processing of votes as stipulated here meets the definition for an offense or offenses which "occurred[] in two or more judicial circuits as part of a related transaction." § 16.56(1)(a), Fla. Stat.

Our conclusion finds further support in the analysis provided by State v. Tacher, 84 So. 3d 1131 (Fla. 3d DCA 2012). Tacher held that the Office of Statewide Prosecution properly exercised jurisdiction to prosecute a single-circuit drug deal under the theory that offense occurred in two or more judicial circuits as part of a related transaction. See id. at 1134. The court concluded that the co-defendants served as "an integral part of the overall criminal enterprise that included the purchase of contraband pharmaceutical drugs . . . transported by bus through various Florida judicial circuits by a co-

---

[6]The same logic applies to the act of illegally voting (Count II of the indictment), which necessarily involves the vote being counted. A vote is first tabulated in Miami-Dade County with such tabulation transmitted to the Department of State and ultimately the Elections Canvassing Commission in Leon County. See, e.g., Fla. Admin. Code R. 1S-2.053 (explaining process by which the supervisor of the county canvasing board transmits the summary election results to the Department of State Division of Elections); see also § 102.111, Fla. Stat. (setting forth the duties of the Elections Canvassing Commission which meets to certify returns in Leon County). Therefore, a related (and inexorably intertwined) transaction to the act of Miller's voting in Miami-Dade County occurred in Leon County.

perpetrator, and delivered in Miami–Dade County to the co-defendants, who sold the drugs to others and laundered the money."  Id. Here, unlike Tacher, we don't have co-defendants, but we do have a party who himself only committed an act or acts in one jurisdiction but relied on related transactions in multiple jurisdictions to complete the illegal act or acts. In other words, the related transactions in Leon County were necessary for Miller to receive his voter registration and vote in Miami-Dade County. Accordingly, as in Tacher, "we conclude there is sufficient evidence to establish the [Office of Statewide Prosecution's] authority under the first theory provided in section 16.56(1)(a)." Id.

Reversed and remanded with instructions to reinstate the information.

GORDO, J., concurs.

13

SCALES, J. (dissenting)

I respectfully dissent. While I agree with the majority that this case comes down to, and the authority of the Office of Statewide Prosecution ("OSP") to prosecute Ronald Lee Miller rests upon, a statutory construction of section 16.56(1)(a) of the Florida Statutes, I would construe the plain language of the statute consistent with the trial court's construction and I would affirm the trial court's dismissal of both counts of the information.

### I. Section 16.56(1)(a) and its two bases authorizing OSP's authority

Section 16.56(1) creates the OSP within Florida's Department of Legal Affairs. Subsection (a) of the statute contains a schedule of fifteen enumerated offenses that the OSP may investigate and prosecute. Subsection (a) then goes on to specifically and significantly limit the OSP's authority over those enumerated offenses:

> The office shall have such power only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits. Informations or indictments charging such offenses shall contain general allegations stating the judicial circuits and counties in which crimes are alleged to have occurred or the judicial circuits and counties in which crimes affecting such circuits or counties are alleged to have been connected with an organized criminal conspiracy.

§ 16.56(1)(a), Fla. Stat. (2020).

Hence, the statute sets forth two separate bases upon which OSP authority may be exercised. The enumerated crime either (i) must have *occurred* in two or more judicial circuits, as part of a related transaction (in which event the information must specify the judicial circuits and counties in which the crime *occurred*), or (ii) must be connected with an organized conspiracy affecting two or more judicial circuits (in which event the information must specify the judicial circuits and counties affected by the crime). Id. In this case, only the first premise of OSP's statutory authority is implicated because there is no assertion of any conspiracy under the second premise.

**II. Construction of the plain text of Section 16.56(1)(a)**

Thus, we are called upon to construe the following portion of the statute: "The office may . . . prosecute . . . [a]ny crime involving voter registration [or] voting . . . o*nly* when . . . such offense . . . has occurred[] in two or more judicial circuits as part of a related transaction[.]" § 16.56(1)(a)12., Fla. Stat. (2020) (emphasis added).

In my view, based on the statute's plain text, for the OSP to have statutory prosecutorial authority, the voting offense must *both* "occur in two or more judicial circuits" *and* the occurrences must be "part of a related

15

transaction." Put another way, unless the "offense" has "occurred in two or more judicial circuits," the OSP has no authority, and we do not reach the issue of whether the occurrences in multiple judicial circuits were a part of a related transaction. Further buttressing this construction is the subsequent sentence in section 16.56(1)(a): "Informations or indictments charging such offenses shall contain allegations stating the judicial circuits and counties in which *crimes are alleged to have occurred*[.]" § 16.56(1)(a), Fla. Stat. (2020) (emphasis added). Read *in pari materia*, these two unambiguous statutory provisions authorize OSP involvement *only* when elements of the charged offenses are alleged to have occurred in more than one judicial circuit.

**III. Construction of Section 16.56(1)(a) in conjunction with the charged offenses**

Miller was charged with violating sections 104.011(1) and 104.15 of the Florida Statutes. Section 104.011(1) reads in relevant part as follows: "A person who willfully *swears* or *affirms* falsely to any oath . . . in connection with or arising out of voting or elections commits a felony . . . ." § 104.011(1), Fla. Stat. (2020) (emphasis added). Section 104.15 reads in relevant part as follows: "Whoever, knowing he or she is not a qualified elector, willfully *votes* at any election is guilty of a felony . . . ." § 104.15, Fla. Stat. (2020) (emphasis added).

16

Miller did not "swear or affirm" his oath, nor did he "vote," anywhere other than in Miami-Dade County. As the State rightfully concedes, no portion of either alleged offense "occurred" anywhere other than in Miami-Dade County. In my view, because no portion of either charged "offense" was alleged to have "occurred" in any judicial circuit other than the 11th (Miami-Dade County), that is where the inquiry ends. Section 16.56(1)(a)'s "as part of a related transaction" language is not implicated, and the OSP lacks prosecutorial authority.

### III. Majority's construction of Section 16.56(1)(a)

The majority takes a far more expansive interpretive approach. The majority seems unconcerned that Miller's alleged offenses occurred in a single judicial circuit. Rather, the majority puts its focus on whether Miller's single-county actions occasioned "reasonably foreseeable" activity by other actors in other judicial circuits. (See majority opinion at 11). Seizing on the statute's "related transaction" language, the majority concludes that, despite the alleged offenses occurring in a single judicial circuit, the statute nevertheless authorizes OSP involvement because the Leon County transactions triggered by Miller's Miami-Dade County acts "were not only related, but they were also required acts before Miller got his voter registration and proceeded to vote. . . . . It doesn't matter that Miller may not

17

have intended to set off a chain of related events in other jurisdictions in order to vote." (Id. at 9-10). The majority then imports tort concepts into its analysis of whether the charged offenses authorize OSP prosecution: "[I]t is not only reasonably foreseeable that a voter registration . . . would be processed by . . . local and state officials . . . in the state capital . . . , but it is a required part of the transaction to allow Miller to register to vote." (Id. at 11).[7]

---

[7] The majority relies on two cases to support its conclusion that a court can look at activities other than those undertaken by the defendant to determine whether an offense has occurred as part of a related transaction: Pereira v. United States, 347 U.S. 1 (1954), and State v. Tacher, 84 So. 3d 1131 (Fla. 3d DCA 2012). (See majority opinion at 10-12). I do not see how either case is instructive to the statutory construction issue presented in this case or supportive of the majority's reading of section 16.56(1)(a).

In Pereira, the defendants, who had concocted and carried out a multi-state scheme to dupe a wealthy widow, were convicted of mail fraud, transportation of stolen property across state lines, and a conspiracy to commit those crimes. Pereira, 347 U.S. at 3. The defendants challenged their convictions suggesting "there was no evidence of any mailing or of transporting stolen property interstate[.]" Id. at 7. The Pereira court affirmed the convictions, concluding, among other things, that the evidence showed the defendants' scheme occurred when they caused stolen funds to be mailed from a bank in one state and deposited in a bank in another state. Id. at 8-9. The Pereira case does not construe a statute relating to prosecutorial authority. Pereira merely comes to the conclusion that the defendants committed crimes at both ends of a transaction.

While Tacher is a case involving OSP authority, it is inapposite to this case. In Tacher, the defendants received delivery of illegal pharmaceutical drugs after their transport through multiple Florida judicial circuits, and then sold the drugs in Miami-Dade County. Tacher, 84 So. 3d at 1132-33. Tacher is

18

I agree with the majority's discussion as to what constitutes a "transaction" (Id. at 8-9), that Miller's actions "set off a chain of related events in other jurisdictions" (Id. at 10), and I also agree that those events were "reasonably foreseeable" (Id. at 11). But I do not view these as relevant considerations in this case because, pursuant to section 16.56(1)(a)'s plain language, OSP has prosecutorial authority "only" when the charged "*offense . . .* has *occurred* in two or more judicial circuits," and no portion of either charged offense is alleged to have *occurred* in any circuit other than the Eleventh Judicial Circuit.

The statute *narrowly* authorizes OSP involvement, and the statute's plain text does not contain any of the broad relatedness concepts relied upon by the majority to assert OSP's authority. For example, nowhere does the statute suggest authority where it is "reasonably foreseeable" that the charges implicate third-party actions in other jurisdictions (Id. at 11), or where the charges "set off a chain of related events" in other jurisdictions (Id. at

---

not instructive because the defendants in Tacher were cogs in a crime that occurred in more than one judicial circuit. In fact, in Tacher, the defendants did not dispute that the information contained "sufficient allegations of multi-county criminal activity." Id. at 1133. Their participation in the trafficking of the drugs was not confined to one judicial circuit, hence OSP involvement was authorized by the statute. Here, the State has stipulated, and at oral argument conceded, that Miller's alleged crimes occurred entirely in Miami-Dade County.

10). In my view, had the legislature intended so broadly to authorize OSP's involvement when alleged charges implicated, related to, triggered actions in, or affected other jurisdictions, it certainly could have employed such broad language in the statute. It did not. Instead, the legislature prescribed OSP's prosecutorial authority "only" when alleged offenses "occurred" in multiple jurisdictions.

I think the trial court correctly concluded that the OSP lacked the prosecutorial authority to pursue the charged offenses, and I would affirm the trial court's dismissal of both counts of the information.