# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-2104
Lower Tribunal No. 2022-CF-009611-A-O

_____

STATE OF FLORIDA,

Appellant,

v.

PETER WASHINGTON, JR.,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Jenifer M. Harris, Judge.

February 21, 2025

GANNAM, J.

The State appeals the trial court's dismissal of an information filed by the Office of Statewide Prosecution (OSP) against Peter Washington, Jr., charging him with a single count of illegal voting in the November 2020 General Election. We affirm because Washington's alleged offense occurred only in the Ninth Judicial Circuit, and the OSP did not have jurisdiction to prosecute Washington for the offense under article IV, section 4 of the Florida Constitution or section 16.56 of the Florida Statutes (2022).

Two of our sister courts reached the opposite result on nearly identical facts: *State v. Miller*, 394 So. 3d 164 (Fla. 3d DCA 2024), and *State v. Hubbard*, 392 So. 3d 1067 (Fla. 4th DCA 2024), *review granted*, No. SC2024-1522, 2025 WL 79096 (Fla. Jan. 13, 2025). As shown below, our interpretation of the disputed constitutional and statutory provisions leads us to certify conflict with *Miller* and *Hubbard*.

## I. The Office of Statewide Prosecution

The OSP's existence and authority derive from a 1986 amendment to the Florida Constitution, along with implementing legislation that became effective upon voters' approval of the amendment.[1] The constitutional amendment created the new statewide prosecutor office and defined its jurisdiction:

> There is created in the office of the attorney general the position of statewide prosecutor. The statewide prosecutor shall have concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws *occurring or having occurred, in two or more judicial circuits as part of a related transaction*, or when any such offense *is affecting or has affected two or more judicial circuits as provided by general law*.

Art. IV, § 4(b), Fla. Const. [hereinafter the "**OSP Clause**"] (emphasis added).

---

[1] *See* Fla. HJR 386 (1985) at 2220–22 (proposed amendments to art. IV, § 4 & art. V., § 17, Fla. Const.); Ch. 85-179, § 1, at 1295–96, Laws of Fla. (codified at § 16.56, Fla. Stat. (1985)).

The implementing legislation, effective upon approval of the amendment, added a new section 16.56 to the Florida Statutes, creating the OSP by name and defining subject matter and other conditional limits on the office's prosecutorial authority:

> 16.56 Office of Statewide Prosecution. —
>
> (1)  There is created in the Department of Legal Affairs an Office of Statewide Prosecution. . . . The office may:
>
> (a)  Investigate and prosecute the offenses of bribery, burglary, criminal fraud, criminal usury, extortion, gambling, kidnapping, larceny, murder, prostitution, perjury, and robbery; of crimes involving narcotic or other dangerous drugs; of any violation of the provisions of the Florida RICO (Racketeer Influenced and Corrupt Organization) Act; of any violation of the provisions of the Florida Anti–Fencing Act; of any violation of the provisions of the Florida Antitrust Act of 1980, as amended; or of any attempt, solicitation, or conspiracy to commit any of the crimes specifically enumerated above. The office shall have such power only when any such offense *is occurring, or has occurred, in two or more judicial circuits as part of a related transaction*, or when any such offense *is connected with an organized criminal conspiracy affecting two or more judicial circuits*.

§ 16.56, Fla. Stat. (1985) [hereinafter the "**OSP Statute**"] (emphasis added).

The OSP Statute has been amended several times since its 1985 enactment. At the time Washington was charged with illegal voting in August 2022, the

3

enumerated crimes had been expanded to include any crime involving "voter registration" or "voting." § 16.56(1)(a)13., Fla. Stat. (2022).

## II. The Washington Prosecution

In 1996, Washington was convicted of attempted sexual battery, making him ineligible to vote under article VI, section 4 of the Florida Constitution. In 2019, Washington registered to vote in Orange County, Florida, in the Ninth Judicial Circuit, and subsequently voted in Orange County in the November 2020 General Election. The General Election ballot included statewide and federal offices and proposed amendments to the Florida Constitution.

The OSP filed a one-count information charging Washington with voting by unqualified elector in violation of section 104.15, Florida Statutes (2020). Although it is undisputed that Washington cast his ballot solely in Orange County, the information alleged that Washington, "in the Ninth and Second Judicial Circuits of Florida, to-wit Orange and Leon Counties, . . . did willfully vote in an election knowing that he is not a qualified elector" and that "said offense occurred in two or more judicial circuits in the State of Florida as part of a related transaction or said offense was connected with an organized criminal conspiracy affecting two or more judicial circuits in the State of Florida."

Washington moved to dismiss the information on the grounds that the OSP lacked authority to prosecute him under the OSP Clause and the OSP Statute because

4

his allegedly illegal voting did not occur in multiple circuits or affect multiple circuits as part of a conspiracy. Prior to the hearing on the motion to dismiss, the parties stipulated that the Orange County Supervisor of Elections and Orange County Tax Collector electronically transmitted Washington's voter registration information to the Florida Department of State in Leon County, in the Second Judicial Circuit, and that when Washington voted in Orange County, the Supervisor of Elections electronically transmitted his votes to the Department of State's Division of Elections in Leon County for counting. The parties also stipulated, however, that Washington himself did not enter the Second Circuit or transmit any information to the Second Circuit in connection with his registration or voting in Orange County, and that Washington's voting did not involve a criminal conspiracy. The trial court granted Washington's motion to dismiss, ruling that the OSP "does not have the statutory authority to prosecute this matter" because "[a]ll of [Washington's] alleged actions occurred in Orange County."

### III. Analysis

### A. Questions Presented and Standard of Review

On appeal, the State seeks reversal of the trial court's dismissal order, arguing the court erred in its conclusion that Washington's allegedly illegal voting in Orange County did not occur in multiple circuits as part of a related transaction. But the State also seeks remand, irrespective of the merits of the trial court's dismissal, so

5

the OSP can amend the information to include its new, expanded authority to prosecute voting offenses that merely affect multiple circuits (with no conspiracy) under a 2023 amendment to the OSP Statute that became effective two days after dismissal of the information. Thus, the questions before us are whether the trial court erred in dismissing the OSP's information for lack of authority under the law existing at the time of his alleged voting offense, and whether we should remand in any event for the OSP to amend its information to add its new prosecutorial authority under a law that became effective two days after dismissal. Both are questions of law we review de novo. *See State v. Tacher*, 84 So. 3d 1131, 1132 (Fla. 3d DCA 2012) ("We review a trial court's order on a motion to dismiss de novo where, as here, it concerns a question of law.").

Answering these questions requires our interpretation of the sources and limits of the OSP's power in the OSP Clause and the OSP Statute. In our opinion, no durable standards for interpreting the governing texts have emerged from the case precedent addressing the OSP's jurisdiction. Without any authoritative interpretation by the Florida Supreme Court or our own district, we undertake our interpretive work according to first principles. *See CED Cap. Holdings 2000 EB, LLC v. CTCW-Berkshire Club, LLC*, 363 So. 3d 192, 195 (Fla. 6th DCA 2023).

Florida courts "follow the supremacy-of-text principle—namely, the principle that the words of a governing text are of paramount concern, and what they convey,

6

in their context, is what the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (cleaned up) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). Thus, we interpret Florida's constitution and statutes according to the plain meaning of their text, looking to "all the textual and structural clues that bear on the meaning of a disputed text" and using the traditional interpretive canons for guidance where helpful. *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (cleaned up).

### B. Interpreting the OSP Clause and the OSP Statute

In deciding the first question before us—whether the OSP had authority to prosecute Washington's alleged voting crime as having "occurred" in multiple circuits "as part of a related transaction"—we must decide whether we are interpreting the "occurred" and "related transaction" language in the OSP Clause in the Florida Constitution, the similar language in the OSP Statute, or both—and whether it matters. *Compare* Art. IV, § 4(b), Fla. Const. ("occurring or having occurred, in two or more judicial circuits as part of a related transaction"), *with* § 16.56(1)(a), Fla. Stat. (2022) ("occurring, or has occurred, in two or more judicial circuits as part of a related transaction"). Answering these questions requires us to deal with an interpretive hitch not addressed in prior cases: the OSP Clause's jurisdictional grant is partially self-executing and partially dependent on the OSP Statute.

7

The OSP Clause created the OSP. Art. IV, § 4(b), Fla. Const. ("There is created . . . the position of statewide prosecutor."). And the OSP Clause gives jurisdiction to the office, concurrent with the state attorneys of the judicial circuits, to prosecute two types of criminal violations: (1) offenses "occurring" in multiple circuits "as part of a related transaction" (multi-circuit "**occurrence jurisdiction**"), and (2) offenses "affecting" multiple circuits "as provided by general law" (multi-circuit "**effects jurisdiction**"). *Id.* The OSP Clause occurrence jurisdiction is self-executing because it does not depend on legislative enactment. *See Fla. Hosp. Waterman, Inc. v. Buster*, 984 So. 2d 478, 485–86 (Fla. 2008) ("'[A] constitutional provision should be construed to be self-executing [when] the provision lays down a sufficient rule by means of which the . . . purpose which it . . . is intended to accomplish may be determined . . . without the aid of legislative enactment.'" (quoting *Gray v. Bryant*, 125 So. 2d 846, 851 (Fla. 1960))). The potentially far broader effects jurisdiction, however, expressly depends on legislation. Art IV, § 4(b), Fla. Const. ("affecting . . . two or more judicial circuits *as provided by general law*" (emphasis added)).[2]

---

[2] The postpositive modifier "as provided by general law" in article IV, section 4(b), only modifies the phrase "when any such offense is affecting or has affected two or more judicial circuits." This effects phrase is the modifier's nearest reasonable referent because, by punctuation and structure, the phrase is not grammatically parallel to the preceding occurrence phrase, "violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related

8

Consistent with the OSP Clause's grant of legislative authority to define the OSP's effects jurisdiction, the original OSP Statute defined and limited effects jurisdiction by subject matter—e.g., "offenses of bribery, burglary, criminal fraud, [etc.]"—and further limited it to any such offense "connected with an organized criminal conspiracy" affecting multiple circuits. § 16.56(1), Fla. Stat. (1985). But the OSP Statute also purported to define and limit the OSP's occurrence jurisdiction by the same subject matter, even though the OSP Clause enshrined the OSP's occurrence jurisdiction in the Florida Constitution without subject matter limitations. *Id.* And, while the OSP Clause enshrined creation of the OSP in the constitution, the OSP Statute also purported to create the OSP. *See* § 16.56(1), Fla. Stat. (1985) ("There is *created . . .* an Office of Statewide Prosecution. . . . The office *may . . . [i]nvestigate and prosecute . . . .*" (emphasis added)).

To the extent there is any conflict between the seemingly duplicative creating and jurisdictional language in the OSP Clause and the OSP Statute, the constitutional provision must prevail over the subordinate statutory enactment. *See Fla. Hosp. Waterman*, 984 So. 2d at 494.[3] But any such conflict does not matter *in this case*

---

transaction." *See Reading Law* at 152–53 ("Nearest-Reasonable-Referent Canon"); *id.* at 161–66 ("Punctuation Canon").

[3] Any incongruity between the OSP Clause and OSP Statute may be attributable to the fluidity of the legislative process. Late in the 1985 legislative session that birthed the OSP Clause as a proposed constitutional amendment, and

because Washington's alleged voting crime is within the subject matter limitations of the OSP Statute. *See* § 16.56(1)(a)13., Fla. Stat. (2022) ("Any crime involving voter registration, voting . . . ."). Thus, whether the OSP's prosecution of Washington is governed by the self-executing occurrence jurisdiction of the OSP Clause or the subject-limited occurrence jurisdiction of the OSP Statute, our analysis is the same—either way, we must determine whether Washington's alleged voting offense occurred in multiple circuits as part of a related transaction.[4]

---

the OSP Statute to implement it, the draft OSP Clause would have given the Legislature authority to create the OSP and define its jurisdiction, and the draft OSP Statute did both. *See* Fla. S. Jour. 374–76 (Reg. Sess. 1985). By the time of enactment, however, the OSP Clause had been amended to make the OSP's creation and its occurrence jurisdiction self-executing, with no corresponding change to the enacted OSP Statute. *See* Fla. HJR 386 (1985) at 2221 (codified at art. IV, § 4(b), Fla. Const.); Ch. 85-179, § 1, at 1295–96, Laws of Fla. (codified at § 16.56(1)(a), Fla. Stat. (1985)). A contemporary law review article suggests that the last-minute elevation of the OSP's creation and occurrence jurisdiction from statutory enactment to self-executing constitutional provision was a compromise among the competing interests of the Governor's Commission on the Statewide Prosecution Function, the Florida Prosecuting Attorneys Association, and the House and Senate Conference Committee. *See* R. Scott Palmer & Barbara M. Linthicum, *The Statewide Prosecutor: A New Weapon against Organized Crime*, 13 Fla. St. U. L. Rev. 653, 676–80 (1985).

[4] Offenses occurring in multiple circuits are necessarily a subset of offenses affecting multiple circuits. Thus, the OSP Statute's occurrence jurisdiction language can be read, instead, as an additional limitation on the OSP Statute's effects jurisdiction, along with the conspiracy limitation. This reading would comport with the OSP Clause's grant of legislative authority to define effects jurisdiction and minimize conflict (though not redundancy) with the OSP Clause's self-executing occurrence jurisdiction.

## C. Interpreting Occurrence Jurisdiction

## 1. Where a crime occurs

Where does a crime occur for purposes of OSP prosecutorial jurisdiction? Neither "occurring" nor "occurred" are defined in the OSP Clause or OSP Statute or in any authoritative decision of the Florida Supreme Court. "When a contested term is undefined in statute or by our cases, we presume that the term bears its ordinary meaning at the time of enactment, taking into consideration the context in which the word appears." *Conage*, 346 So. 3d at 599. "And we typically look to dictionaries for the best evidence of that ordinary meaning," *id.*, which evidence includes both "legal and non-legal dictionary definitions," *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017). Thus, we begin with the ordinary meaning of "occur" according to contemporary dictionary definitions.

At the time of enactment and in the context of the OSP Clause and OSP Statute, the ordinary meaning of "occur" was "[t]o present itself in the course of events; to happen, befall, take place as an event or incident." *Occur*, *Oxford English Dictionary* (2d ed. 1989). The contemporary legal dictionary definition is similar: "To happen; to meet one's eye; to be found or met with; to present itself; to appear; hence to befall in due course; to take place; to arise." *Occur*, *Black's Law Dictionary* 1080 (6th ed. 1990). Thus, a crime occurs where it happens or takes place.

But how do we decide where a crime happens or takes place to determine whether it occurred in multiple judicial circuits? Where a crime occurs, for prosecution purposes, is a concept the Legislature has authoritatively developed in the criminal venue statutes. *See* Ch. 910, Fla. Stat. Under these statutes, where a crime occurs determines where it can be prosecuted and tried. And where a crime can be prosecuted and tried determines the jurisdiction of the respective circuits' state attorneys to prosecute that crime because the Florida Constitution and Statutes provide that the prosecutorial jurisdiction of each circuit's state attorney is limited by the boundaries of the circuit. *See* Art. V, § 17, Fla. Const. ("[T]he state attorney shall be the prosecuting officer of all trial courts in that circuit."); § 27.02, Fla. Stat. (1985) ("The state attorney shall appear in the circuit and county courts within his judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal . . . ."); *Barnes v. State*, 743 So. 2d 1105, 1112 (Fla. 4th DCA 1999) ("[S]ection 27.02 plainly limits a State Attorney's authority to represent the state to criminal prosecutions in the county and circuit courts within the judicial circuit in which the State Attorney holds office.").

The general rule of venue for criminal cases is that "criminal prosecutions shall be tried in the county where the offense was committed." § 910.03(1), Fla. Stat. (1985). But "[i]f the acts constituting one offense are committed in two or more counties, the offender may be tried in any county in which any of the acts *occurred*."

12

§ 910.05, Fla. Stat. (1985) (emphasis added). These statutes tell us that, for prosecution purposes, an offense occurs where the acts constituting the offense are committed, and if the acts constituting the offense are committed in two counties, then the offense occurred in both. Obviously, if those two counties are in different circuits, then the offense occurred in both circuits. Thus, the permissible venues for prosecuting and trying a crime, which are based on where the crime occurred, determine which state attorneys have jurisdiction to prosecute the crime. If a crime occurs in two circuits, then it can be prosecuted and tried by the state attorney of either circuit. *See* § 910.05, Fla. Stat. (1985).

We are reminded here that the OSP's prosecutorial jurisdiction is always concurrent with the jurisdiction of the circuits' state attorneys. *See* Art. IV, § 4(b), Fla. Const. ("The statewide prosecutor shall have concurrent jurisdiction with the state attorneys to prosecute . . . ."); § 16.56(3), Fla. Stat. (1985) ("The statewide prosecutor may [exercise listed powers] and exercise such other powers as by law are granted to state attorneys."). And nothing in the text of the OSP Clause or OSP Statute creates new crimes or alters the venue statutes for purposes of the OSP's concurrent prosecutorial jurisdiction. Thus, the OSP may elect to prosecute a crime meeting its jurisdictional conditions in any circuit where the circuit's state attorney could prosecute it, and may not prosecute a crime in a circuit where no state attorney has authority to prosecute it. Given this significance of where a crime occurs for

13

purposes of determining the *limits* of the OSP's concurrent prosecutorial jurisdiction, the same where-a-crime-occurs concepts, in our view, are equally applicable in determining the *conditions* of the OSP's prosecutorial jurisdiction.

In accordance with the plain meaning of "occur" as used in the OSP Clause and OSP Statute, as illuminated by the criminal venue statutes determining prosecutorial jurisdiction, a crime occurs where the acts constituting the offense are committed, and if the acts constituting the offense are committed in two or more circuits, then the crime occurred in all of them.[5]

### 2. When a crime is part of a related transaction

Having established that a crime occurs where the acts constituting the crime are committed, the next question is, when is a crime "part of a related transaction?" Again, we turn to contemporary dictionary definitions, starting with the word "transact," which meant, in its most modern, ordinary sense, "To carry through,

---

[5] In future cases with different facts, other criminal venue statutes may point to where a crime occurs for purposes of OSP jurisdiction, as may other considerations. *See*, *e.g.*, § 910.04 (principal liability) (*see* note 6, *infra*); § 910.13 (accessory after the fact); § 910.14 (kidnapping). *Compare also* Ch. 2007-143, § 2, Laws of Fla. (codified at § 16.56(1)(b), Fla. Stat. (2023)) (amending OSP Statute to provide that any of statute's enumerated crimes "facilitated by or connected to the use of the Internet. . . . is a crime occurring in every judicial circuit within the state"), *with* Ch. 2001-99, § 2, Laws of Fla. (codified at § 910.15(b), Fla. Stat. (2023)) (amending criminal venue statute for communication systems crimes to add, "For purposes of this section, if a communication is made by or made available through the use of the Internet, the communication was made in every county within the state").

14

perform (an action, etc.); to manage (an affair); now *esp*[*ecially*] to carry on, conduct, do (business)." *Transact*, *Oxford English Dictionary* (2d ed. 1989). The legal dictionary definition is similar: "To undertake negotiations; to carry on business; to have dealings . . . ." *Transact*, *Black's Law Dictionary* 1496 (6th ed. 1990). From there we consider the word "transaction," which ordinarily meant, "That which is or has been transacted; an affair in course of settlement or already settled; a piece of business . . . ." *Transaction*, *Oxford English Dictionary* (2d ed. 1989). And again, the legal dictionary definition is similar: "Act of transacting or conducting any business; between two or more persons; negotiation; that which is done; an affair. An act, agreement, or several acts or agreements between or among parties whereby a cause of action or alteration of legal rights occur." *Transaction*, *Black's Law Dictionary* 1496 (6th ed. 1990). *Black's* continues, "It must therefore consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned . . . ." *Id.*

An essential sense of "transaction" emerging from these definitions is joint venture or undertaking—i.e., a business or other dealing involving two or more persons. We must next ask, to what must the "related transaction" be "related?" In context, the plain meaning of the OSP Clause is that the offense to be prosecuted by the OSP must occur "as part of" a joint undertaking of two or more persons "related" to the offense. Thus, the offense must be part of the joint undertaking, and there must

otherwise be some "conne[ct]ion, correspondence, or association" between the offense and the undertaking. *See Relation, Oxford English Dictionary* (2d ed. 1989); *Related*, *id.*; *Related*, *Black's Law Dictionary* (6th ed. 1990) ("Connected in some way; having relationship to or with something else . . . ."). So understood, the OSP's occurrence jurisdiction depends on a multi-circuit offense ("occurring" in multiple circuits) that is also part of a multi-person venture or undertaking connected to the offense ("part of a related transaction").[6]

## D. Applying Occurrence Jurisdiction

Applying these standards to Washington's alleged crime of unauthorized voting, we must conclude the OSP had no jurisdiction to prosecute Washington because his offense occurred in only one circuit. The OSP charged Washington

---

[6] The venue statute covering principal liability provides an illustration of how the multi-circuit, multi-person conditions of OSP occurrence jurisdiction might be satisfied. Section 777.011, Florida Statutes (2023), provides that any person who "commits any criminal offense" and any person who "aids, abets, counsels, hires, or otherwise procures such offense to be committed" are both "principals in the first degree" who can be prosecuted for the offense, even if the aiding, abetting, or procuring principal "is not actually or constructively present at the commission of such offense" by the other principal. The venue statutes incorporate these concepts in section 910.04, which provides, "If a person in one county aids, abets, or procures the commission of an offense in another county, the person may be tried in either county." This suggests, though we do not decide in this case, that if a principal in one circuit aids, abets, or procures the commission of a crime by another principal in another circuit, the crime occurred in both circuits for purposes of prosecutorial jurisdiction, and the crime was part of a related transaction between the two principals.

under section 104.15, Florida Statutes, which provides, "Whoever, knowing he or she is not a qualified elector, willfully *votes* at any election is guilty of a felony of the third degree . . . ." (emphasis added). However we formulate the elements of this crime, there is only one act—voting. The rest of the elements comprise knowledge and intent. Thus, the sole act constituting Washington's alleged crime of unauthorized voting was his voting, and it occurred solely in Orange County. No act constituting the offense occurred in Leon County or anywhere else.

Because Washington's alleged offense occurred in only one circuit, we do not have to decide whether it was also part of a related transaction. *Cf. Carbajal v. State*, 75 So. 3d 258, 262 (Fla. 2011) ("Carbajal is correct that if his criminal activity in Florida actually occurred in only Lee County, Florida, the OSP was not authorized to prosecute charges arising from that conduct."). But saying what a related transaction *is*, above, helps us spot what it *isn't*, here. The State argues for a much broader interpretation of "related transaction" to support OSP jurisdiction. According to the State, "Washington's crime happened 'as part of' a multi-circuit related transaction: his scheme to vote illegally in the 2020 election." The "scheme" comprised Washington's illegally registering to vote and illegally voting, which the State deems a multi-circuit "related transaction" because his registration would not have been effective without the Department of State's verification of his registration information in the Second Circuit (Leon County).

17

The State's argument, however, rearranges the text of the OSP Clause and OSP Statute to make it mean something different from what it says. Instead of showing how Washington's charged offense of illegal voting occurred in multiple circuits *and* was part of a related transaction, the State combines Washington's single-circuit offense of illegal voting with the uncharged single-circuit offense of illegal voter registration, and adds the transmission of Washington's voter registration information by one government official in Orange County to another in Leon County, to compose a "related transaction" that occurred in multiple circuits. But a "related transaction" occurring in multiple circuits is not what the text of the OSP Clause or OSP Statute requires. Thus, whatever the effect of Washington's alleged illegal registration and the transmission of his information between government officials, those acts did not make the charged offense of illegal voting occur in multiple circuits.

The State relies heavily on the Fifth District's opinion in *King v. State*, 790 So. 2d 477 (Fla. 5th DCA 2001), to support its loose interpretation of the OSP's occurrence jurisdiction under the OSP Clause and OSP Statute. And to be sure, the *King* court's broad interpretation of the OSP provisions gives the State some support:

> Does it mean that the charged offense must actually have occurred in two or more judicial circuits *and* be part of a related transaction, or does it mean that an offense which is local in nature is to be considered as having roots in more than one judicial circuit if it is related to a criminal activity which involves or involved multiple judicial

18

circuits? The policy behind both provisions seems to be to authorize the statewide prosecutor to pursue criminal enterprises that operate across judicial borders and to prosecute those related offenses, even otherwise local offenses, in any county in which the criminal enterprise operates or has operated.

790 So. 2d at 479. But the *King* court's expressly policy-driven approach does not square with the supremacy-of-text principle validated by the Florida Supreme Court in *Ham*. *See* 308 So. 3d at 946. Even in the Fifth District, the approach does not appear to remain viable post-*Ham*. *See, e.g.*, *Buechel v. Shim*, 340 So. 3d 507, 511 (Fla. 5th DCA 2021) ("Any public policy considerations raised by [the statute] are for the legislative branch, not a court." (citing Art. II, § 3, Fla. Const.)), *opinion approved of*, 339 So. 3d 315 (Fla. 2022) ("[W]hen determining the meaning of a statute, courts do not reach policy considerations where the statute's meaning is clear."). *Ham* requires us to stop after answering the *King* court's first question— yes, the occurrence jurisdiction text of the OSP Clause and OSP Statute "[d]oes . . . mean that the charged offense must actually have occurred in two or more judicial circuits *and* be part of a related transaction." *King*, 790 So. 2d at 479.

### E. Interpreting and Applying Effects Jurisdiction

Having agreed with the trial court's dismissal of the information against Washington for lack of occurrence jurisdiction, we are left to decide whether we can nonetheless reverse and remand for the OSP to amend the information with the

19

OSP's expanded effects jurisdiction, which became effective after the trial court's dismissal. For the reasons below, we cannot.

On February 15, 2023—two days after dismissal of the information against Washington—an amendment to the OSP Statute became effective, giving election-related crimes their own provision in the statute and expanding the OSP's statutory authority to prosecute them. Ch. 2023-2, § 1, Laws of Fla. (codified at § 16.56(1)(c), Fla. Stat. (2023)). The new provision enumerates several election-related crimes within the OSP's statutory authority, including the authority to "[i]nvestigate and prosecute any crime involving . . . [v]oting in an election in which a candidate for a federal or state office is on the ballot . . . ." § 16.56(1)(c), Fla. Stat. (2023). Prior to the amendment, the OSP's statutory jurisdiction was limited to enumerated crimes occurring in multiple circuits as part of a related transaction (mirroring the OSP Clause's language) or connected with a criminal conspiracy affecting multiple circuits. § 16.56(1)(a), Fla. Stat. (2022). As amended, the conspiracy condition is removed for the newly enumerated election crimes, so the OSP can prosecute them if they merely affect multiple circuits. § 16.56(1)(c), Fla. Stat. (2023). Thus, for these election crimes, the Legislature has expanded the OSP's statutory effects jurisdiction to the limit of that allowed by the constitutional OSP Clause.[7] Art. IV, § 4(b), Fla.

---

[7] The 2023 amendment's expansion of the OSP's statutory effects jurisdiction to the constitutional limit appears to swallow the alternative multi-circuit occurrence

20

Const. ("when any such offense is affecting or has affected two or more judicial circuits as provided by general law").

The OSP did not ask the trial court for leave to amend the information or otherwise submit the issue of the OSP's newly expanded jurisdiction to the trial court for decision prior to appealing the dismissal order to this court. Thus, the State did not preserve the issue for our review. *See* § 924.051(1)(b), (3), Fla. Stat. (2023); *Sparre v. State*, 289 So. 3d 839, 848 (Fla. 2019) ("To preserve an issue for appellate review, a litigant must present the issue to the trial court in a timely, specific manner and obtain a ruling.").

True, the OSP could not have raised its amended effects jurisdiction in the trial court prior to dismissal of the information because the amendment did not take effect until two days later. Thus, the State is correct that filing a motion for rehearing after the dismissal would have been inappropriate under Florida Rule of Criminal Procedure 3.192 ("A motion for rehearing . . . shall not present issues not previously raised in the proceeding.") But the rule expressly does not prohibit a motion for

---

limitation, which facially still applies to the new election crimes provision. *See* § 16.56(1)(c), Fla. Stat. (2023) ("The office shall have such power only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting, or has affected, two or more judicial circuits.") As noted above (*see* note 4, *supra*), offenses affecting multiple circuits—i.e., the new limit—necessarily include offenses occurring in multiple circuits.

21

reconsideration: "Nothing in this rule precludes the trial court from exercising its inherent authority to reconsider a ruling while the court has jurisdiction of the case." *Id.* Thus, the OSP could have raised its newly expanded effects jurisdiction in the trial court by motion for reconsideration, or leave to amend, before its fifteen-day appeal deadline. *See* Fla. R. App. P. 9.140(c)(2). And if the trial court had not ruled on the motion before the appeal deadline, the OSP could have appealed the dismissal order and then moved this Court to relinquish jurisdiction long enough for the trial court to rule. *See* Fla. R. App. P. 9.600(b). The OSP could have preserved the issue, and its failure to do so precludes our review.

## IV. Conflicts

### A. Conflict with *State v. Miller*

As we said at the beginning, our holding conflicts with the Third District's 2-1 decision in *State v. Miller*, 394 So. 3d 164 (Fla. 3d DCA 2024), the facts of which are nearly identical to the present case. In *Miller*, the Third District reversed the dismissal of an OSP information charging Ronald Lee Miller with one count of illegal voter registration and one count of illegal voting. *Id.* at 166. The OSP and Miller stipulated that Miller registered to vote and voted in Miami-Dade County, in the Eleventh Judicial Circuit, and that Miller's voter registration information and votes were transmitted electronically to Leon County, in the Second Judicial Circuit. *Id.* at 166–67. The OSP also stipulated that Miller himself never entered the Second

22

Circuit or transmitted any information to the Second Circuit and acknowledged Miller's registration and voting did not involve a conspiracy. *Id.* at 167. The trial court granted Miller's motion to dismiss the information, ruling the OSP lacked jurisdiction because Miller's alleged acts only occurred in Miami-Dade County. *Id.*

On appeal, the Third District considered whether the alleged registration and voting crimes were "offenses which occurred in two or more judicial circuits as part of a related transaction," *id.* (cleaned up), the conditions triggering what we have labeled occurrence jurisdiction. (*See* pt. III.B, *supra*.) The *Miller* majority concluded it did not matter that Miller only acted in one county because the transmissions of Miller's voter registration and voting information between Miami-Dade County and Leon County were "transactions that occurred in multiple jurisdictions [that] were not only related, but . . . were also required acts before Miller got his voter registration and proceeded to vote." *Id.* at 169. The majority also concluded, "It makes no difference based on the statutory language whether Miller himself communicated or affirmatively acted in concert with anyone outside of Miami-Dade County." *Id.* at 168–69. "In other words, while Miller himself acted only in one jurisdiction, the chain of events that led to the consummation of the crime necessarily occurred in two or more jurisdictions." *Id.* at 169 n.4. Ultimately, the majority reasoned, because the processing of voter registrations and votes by local and state officials was both reasonably foreseeable by Miller and required for him to vote, the

chain of events met the definition of an offense occurring in two or more judicial circuits as part of a related transaction. *Id.* at 170 & n.6.

In our view, the *Miller* majority incorrectly treated Miller's alleged offenses as having occurred in multiple circuits based solely on the fact that his registration and voting information was transmitted between government officials in two circuits. The *Miller* majority mistakenly concluded Miller's alleged offenses occurred in multiple circuits because "transactions" between government officials, subsequent to Miller's acts of registering and voting, occurred in multiple circuits. As we show above, an offense occurs for prosecution purposes where the acts constituting the offense are committed. (*See* pt. III.C.1, *supra*.) Thus, we agree with Judge Scales, the dissenter in *Miller*, that "based on the statute's plain text, for the OSP to have statutory prosecutorial authority, the voting offense must *both* 'occur in two or more judicial circuits' *and* the occurrences must be 'part of a related transaction.'" *Id.* at 171 (Scales, J., dissenting). "Put another way, unless the 'offense' has 'occurred in two or more judicial circuits,' the OSP has no authority, and we do not reach the issue of whether the occurrences in multiple judicial circuits were a part of a related transaction." *Id.*

We also disagree with the *Miller* court's grafting onto Miller's alleged offenses the subsequent and independent multi-circuit acts of government officials, based on the conclusion that the subsequent acts were reasonably foreseeable by

24

Miller. *Id.* at 169–70. In support of this imputation, the majority cited *Pereira v. United States*, 347 U.S. 1, 8–9 (1954). *Id.* at 169. In *Pereira*, the Supreme Court upheld a mail fraud conviction where mailing a fraudulently obtained check was an element of the crime. *Pereira*, 347 U.S. at 8–9. The Court explained that, even though the defendant did not mail the check himself, he caused the mailing of the check by the bank where he deposited it because he knew or could reasonably foresee that the bank would mail the check in the usual course of business. *Id.* In *Miller*, however, the defendant completed all elements of the charged crimes— falsely affirming a voter registration and willfully voting without authorization—in one circuit. There was no additional element of either crime that Miller could cause to be completed by government officials, whether knowingly or with reasonable foresight. Thus, *Pereira* does not support counting as Miller's offenses the subsequent acts of government officials that did not constitute any element of the charged offenses.

We certify conflict with *Miller* to the extent it held the OSP had jurisdiction to prosecute, as an offense occurring in multiple circuits as part of a related transaction, Miller's allegedly illegal voting in one judicial circuit followed by a

25

government official's transmission of Miller's voting information to a government official in another circuit.

## B. Conflict with *State v. Hubbard*

Our second conflict case is the Fourth District's 2-1 decision in *State v. Hubbard*, 392 So. 3d 1067 (Fla. 4th DCA 2024), *review granted*, No. SC2024-1522, 2025 WL 79096 (Fla. Jan. 13, 2025), reversing the dismissal of illegal registration and voting charges against Terry Hubbard. The *Hubbard* majority concluded the OSP had both occurrence and newly expanded effects jurisdiction (as we have labeled them) to prosecute Hubbard's alleged voting crimes. As in *Miller*, the OSP charged Hubbard "with providing false affirmation in connection with an application for voter registration in violation of section 104.011(1), and voting by an unqualified elector in violation of section 104.15." 392 So. 3d at 1069. As in *Miller* and the instant case, the OSP stipulated that Hubbard filed his false voter registration and cast his unauthorized vote in Broward County, county officials subsequently transmitted Hubbard's registration and voting information to state officials in Leon County, Hubbard did not enter or transmit any information to Leon County, and Hubbard's registration and voting were not part of a conspiracy. *Id.* at 1069–70. Also as in *Miller* and the instant case, the trial court dismissed the information against Hubbard because "the 'OSP does not have jurisdiction to investigate and prosecute

26

the Defendant as part of a related transaction in two or more judicial circuits.'" *Id.* at 1070.

On appeal, the Fourth District first decided that the OSP's expanded statutory effects jurisdiction under the 2023 OSP Statute amendment applied to the Hubbard prosecution and appeal because the amendment was procedural, not substantive. *Id.* at 1072. Then, in deciding whether the OSP had either occurrence or effects jurisdiction (as we have labeled them) to prosecute Hubbard, the Fourth District appeared to hold that the OSP had both. *Id.* at 1072–73. After recounting that "Hubbard submitted his voter application in Broward County, with knowledge that the application would be sent to the Department of State in Leon County for verification," and "then voted in Broward County in an election that included candidates for state and federal offices," which "vote was submitted to Leon County," the *Hubbard* court concluded, "Not only did these actions occur in both Broward and Leon County, but voter fraud impacts the public's confidence in elections throughout the state," and, "Naturally, the result of those elections [for statewide and federal offices] impacts voters throughout the state." *Id.* at 1073. Accordingly, the court held that "submitting a fraudulent voter registration in Broward County is an act which requires subsequent involvement of the Secretary of State in Leon County. So too does voting in an election in Broward County. As a result, the OSP had the authority to charge Hubbard with these crimes." *Id.*

To the extent the *Hubbard* court held the OSP had occurrence jurisdiction to prosecute Hubbard for casting an illegal vote in Broward County based on Broward County officials' subsequent transmission of his voting information to state officials in Leon County, we disagree with the holding and certify conflict for the same reasons we disagreed with *Miller*. (*See* pt. IV.A, *supra*.) Here, we agree with the conclusion of Judge May in her *Hubbard* dissent: "That, short and simple, is a single-circuit offense. To view it otherwise, as the OSP requests, is to expand the OSP's reach beyond its constitutional and statutory limits." 392 So. 3d at 1075 (May, J., dissenting). We do not certify conflict, however, with the *Hubbard* court's holding that the OSP had effects jurisdiction to prosecute Hubbard under the 2023 OSP Statute amendment because the OSP did not preserve that issue in the present case.[8] (*See* pt. III.E, *supra*.)

## V. Conclusion

The trial court correctly dismissed the information against Washington because the OSP did not have authority, under the OSP Clause or OSP Statute, to

---

[8] In her *Hubbard* dissent, Judge May argues that the 2023 OSP Statute amendment should not have applied to Hubbard because the OSP did not raise the amendment in the trial court prior to dismissal of the information, though on appeal the State unsuccessfully asked the Fourth District to relinquish jurisdiction to allow the OSP to raise the issue in the trial court. 392 So. 3d at 1073–74 & n.2 (May, J., dissenting). But the *Hubbard* majority did not expressly rule on the preservation issue or otherwise detail the procedural facts that would inform such a ruling, so we are unable to determine whether our decision on preservation is in conflict.

28

prosecute Washington for the alleged crime of unauthorized voting that occurred in only one judicial circuit. On this point, we certify direct conflict with *Miller* and *Hubbard*.

AFFIRMED. CONFLICT CERTIFIED.

WOZNIAK, J., and BALLOU, T.S., Associate Judge, concur.

James Uthmeier, Attorney General, and Alison E. Preston, Assistant Solicitor General, and Jeffrey Paul DeSousa, Chief Deputy Solicitor General, Tallahassee, for Appellant.

Roger L. Weeden, Orlando, for Appellee.

David Giller, of Akin Gump Strauss Hauer & Feld LLP, New York, New York, Pro Hac Vice, for Appellee.

Steven Schulman, of Akin Gump Strauss Hauer & Feld LLP, Dallas, Texas, Pro Hac Vice, for Appellee.

James Dugan, of Willkie Farr & Gallagher LLP, New York, New York, Pro Hac Vice, for G. Alan Tarr, Robert F. Williams, and Quinn Yeargain.

Freddy Funes, of Toth Funes P.A., Miami, Quinn Yeargain, of Widener University Commonwealth Law School, Harrisburg, Pennsylvania, Amicus Curiae for the State Constitutional Law Scholars G. Alan Tarr, Robert F. Williams, and Quinn Yeargain i/s/o Appellee.

Caroline A. McNamara and Daniel B. Tilley, of ACLU Foundation of Florida, Miami, and Nicholas L.V. Warren, of ACLU Foundation of Florida, Jacksonville, and Julie A. Ebenstein, of American Civil Liberties Union, New York, New York, Amicus Curiae for the American Civil Liberties Union, Brennan Center for Justice, ACLU Foundation of Florida, and NAACP Legal Defense and Educational Fund i/s/o Appellee.

Alejandro Moreno, Miami, Amicus Curiae for The Association of Prosecuting Attorneys i/s/o Appellee.

Patricia J. Pena, Washington, D.C., Amicus Curiae for the Due Process Institute, i/s/o Appellee.

Reid Levin, of Reid Levin, PLLC, Boca Raton, Amicus Curiae for the Former Members of The Commission on the Statewide Prosecution Function i/s/o Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED